ISADORE SERRANO *v.* STATE OF INDIANA.

[No. 176S7. Filed March 31, 1977.]

*Samuel L. Goodman, Mark H. Holtan, Kirk A. Pinkerton, Given Dawson & Cappas,* of East Chicago, for appellant.

*Theodore L. Sendak,* Attorney General, *David L. Steiner,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of murder in the perpetration of or attempt to perpetrate a rape and was sentenced to life imprisonment. His appeal to this Court presents the following three issues for our determination:

(1) Did the trial court err in overruling the defendant's Ind. R. Crim. P. 4 (B) motion for discharge?

(2) Did the trial court err in excluding evidence of the defendant's voluntary submission to a polygraph test and evidence of the results of such test?

(3) Was the evidence insufficient, as a matter of law, to support the guilty verdict?

We answer each of the foregoing questions in the negative and affirm the trial court's judgment.

## ISSUE I

Defendant was indicted on March 22, 1974. He was arrested and jailed on March 25, 1974. Thereafter, a series of pre-trial proceedings was initiated which continued until June 9, 1975. On that date, the day set for trial, the defendant filed a motion for discharge, pursuant to Ind. R. Crim. P. 4 (B), a motion for early trial having been theretofore filed on July 31, 1974. It is the defendant's contention that, after allowance for delays chargeable to him, the seventy day period allowed under Ind. R. Crim. P. 4 (B) expired on March 3, 1975. Assuming the correctness of this contention, the defendant, nevertheless, was not entitled to discharge.

We note that on January 14, 1975, the trial judge set the cause for trial on March 24th, a date twenty-one days beyond the alleged critical date. For reasons not disclosed, the case did not proceed for trial on March 24th, but on April 2nd, the case was assigned for trial on June 9th. Counsel for

Defendant does not address himself to the June 9th setting but contends that *Utterback* v. *State*, (1974) 261 Ind. 685, 310 N.E.2d 552, 555 and *State ex rel. Wickliffe* v. *Judge of Criminal Court of Marion County*, (1975) 263 Ind. 219, 328 N.E.2d 420 are not applicable because neither he nor the defendant was in court on January 14th when the March 24th date was selected, *"precluding any possibility that Appellant could object to the trial setting."* (Emphasis added).

Obviously counsel could not have objected on January 14th if he was not present and had no knowledge of the setting. Conspicious by its absence, however, is any claim that he protested at his first opportunity as required by *Buchanan* v. *State*, (1975) 263 Ind. 360, 332 N.E.2d 213.

"* * * In two recent cases, Bryant v. State (1973), [261] Ind. [172], 301 N.E.2d 179, and Utterback v. State (1974), [261] Ind. [685], 310 N.E.2d 552, this Court established the principle that a defendant who knows that the court is making an error assigning a trial date beyond the date permitted by the rules may not be discharged by reason of such error. The logic of such holding is that while a defendant may not be required to take affirmative action to bring himself to trial, other than to request an early trial if desired, if he sits idly by at a time when the court could yet grant to him a trial date within the proper period and permits the court, without objection, to set a date beyond the expiration of such period, he will be deemed to have acquiesced therein. '* * * The courts are under legal and moral mandate to protect the constitutional rights of accused persons, but this should not entirely relieve them from acting reasonably in their own behalf. We will vigorously enforce the right to a speedy trial, but we do not intend that accused persons should escape trial by abuse of the means that we have designed for their protection.' Utterback v. State (supra)." *State ex rel. Wickliffe* v. *Judge of Criminal Court of Marion County, supra,* 328 N.E.2d 420 at 422.

There is nothing about the record in this case, other than the filing of the early trial motion, to indicate that the defendant's claim that he sought an early trial is bona fide. To the contrary, we find the following:

On January 16, 1975, he filed a motion for a change of judge. On March 21st he filed his first discovery motion. On April 2nd the case was rescheduled for trial on June 9th, and no timely objection was interposed. On April 4th, the State responded to the defendant's discovery motion and filed a discovery motion of its own—to which the defendant made no response until the date of trial.

## ISSUE II

The murder for which the defendant stands convicted was committed on December 19, 1972. On April 2, 1973, the defendant voluntarily submitted to a polygraph test at the request of the East Chicago police authorities. The results of this test were favorable to the defendant but, in the opinion of the technician who administered it, they were inconclusive by reason of the defendant's apparent emotional and mental instability. The defendant, nevertheless, indicated an intention to offer the test results into evidence, and the court sustained the State's motion in limine and directed the defendant to refrain from offering the test results or evidence that a test had been given.

"* * * We have held that the degree of accuracy of these tests, currently rated at eighty per cent, is not sufficient to mandate their admission on the question of guilt or innocence. *Zupp* v. *State*, (1972) 258 Ind. 625, 283 N.E.2d 540, and *Reid* v. *State*, (1972) 259 Ind. 166, 285 N.E.2d 279, 'clearly establish the principle that absent some form of waiver or stipulation by the parties the results of polygraph examinations administered to witnesses or parties are not competent evidence in criminal prosecutions.' *McDonald* v. *State*, (1975) [164] Ind. App. [285], 328 N.E.2d 436 at 440. Similarly, and absent some form of waiver, mention that a defendant took a polygraph examination, or facts leading to this conclusion, will not be permitted. *Austin* v. *State*, (1974) [262] Ind. [529], 319 N.E.2d 130; *McDonald, supra.*" *Vacendak* v. *State*, (1976) 264 Ind. 101, 340 N.E.2d 352 at 357.

This subject was also recently treated in *Niehaus* v. *State*, (1977) 265 Ind. 655, 359 N.E.2d 513, wherein we stated that the waiver incidental to submitting to the test was merely a

waiver of rights against self-incrimination. There, as in the case at bar, there was no waiver of the right to object to the introduction of the evidence upon other grounds such as unreliability, hearsay, or the invasion of the province of the jury to determine credibility.

The defendant's argument that the State's action in requesting the examination operated as an implicit stipulation of the probative value of the test results is without supporting authority and is unpersuasive, as is his argument that the State's request and the defendant's submission were waivers overcoming the prohibition against disclosure of the testing.

The defendant further argues that the motion in limine (which we take to mean the proscriptive order issued in response to the motion) was overly broad. However, this position is predicated upon the assumption that the polygraph evidence was admissible; and since we held against him upon that issue, it is not necessary to consider the claimed over-breadth.

## ISSUE III

On December 19, 1972, Debra Gomez was found dead in the hothouse area of Sunnyside Park in East Chicago. She died as a result of asphyxia and strangulation caused manually or by the use of a ligature. The autopsy also revealed that she had died at approximately 5.30 p.m. of that day and that there was evidence of sperm in her vagina. When her body was found, it was nearly nude, her sweater having been pulled up over her face and her slacks and underwear down to her feet. The defendant does not challenge the establishment of the corpus delicti.

At approximately 6:15 of the evening of the same day, an unidentified person wearing a long dark overcoat and a close-cropped hat or hood was seen running from the hothouse area. At approximately 7:00 p.m., the defendant was seen walking in an area approximately seven blocks from the hothouse. At that time he was wearing a long blue coat and had

an afro-style haircut. Defendant was also seen by another witness between 7:00 and 8:00 p.m. on that day, and the last mentioned witness observed fresh scratches upon his hands. This witness testified that when she observed the scratches, Defendant said he had been fighting. The defendant was also seen by a third witness at approximately 11:00 a.m. on December 21st. At that time it was observed that he was wearing a long dark coat and had a large afro-style hair style haircut and had a badly scratched and bruised hand.

The foregoing related evidence, standing alone would be insufficient, as a matter of law, to support the guilty verdict. At most, it tends to establish a suspicion of guilt. *Easton* v. *State,* (1967) 248 Ind. 338, 228 N.E.2d 6; *Johnson* v. *State,* (1926) 199 Ind. 73, 155 N.E. 196. The basis of inferences to support a presumption of fact, is probability. Inferences may not rest upon conjecture. *Johnson* v. *State, supra.*

The foregoing is not disputed. What is disputed is the probative value of the testimony and prior written statement of Norma Hernandez, a friend of the defendant. The crime was committed on December 19, 1972. On September 17, 1973, Norma was arrested and jailed in connection with a burglary. She was held over night. On the following day she gave a written statement to the effect that in January of 1973, at a time when the police had another young man in custody whom they suspected of the murder, the defendant told her and two other companions that he, the defendant, was the one who had killed Debra Gomez, that she had once been his girl friend but that he "hated her, did not like her."

Under cross-examination, Norma testified that she did not believe the defendant when he said he had killed Debra and that the others present did not believe him because he was prone to say ridiculous things. She acknowledged that she had not told police this at the time of the September 17th interrogation but stated that she gave the statement under threat of doing two to five years upon the burglary charge and that she made the statement more incriminating than

it should have been, in order to secure her release. She further testified that at a later date, she told the police that she did not believe the defendant's confession. The defendant seeks to avoid the devastating effect of this evidence of his confession because Norma's statement had been given under police coercion and because she, herself, did not believe the confession or that it had been intended to be taken seriously. It must be remembered, however, that the jury was aware of the circumstances under which Norma gave her statement. Unquestionably it was a factor for them to consider in the weighing process. Mitigating against the permissible, but not required, inference that her statement was untrue, however, is the witness' own in-court repetition of the pertinent portion of the statement. The only difference between her in-court and out-of-court statements is that in court she testified that she did not believe the defendant's confession and did not believe that he had intended it to be taken seriously. The defendant insists that this destroyed the probative value of the confession, citing *Lottie* v. *State,* (1974) 262 Ind. 124, 311 N.E.2d 800, and *Vuncannon* v. *State,* (1970) 254 Ind. 206, 258 N.E.2d 639. These cases, however, are not analogous to the case before us. In each of those cases we held that the witnesses' testimony was so uncertain and vacillating as to be disentitled, in context, to the weight required to render it of sufficient probative value to support a guilty verdict beyond a reasonable doubt. In the case at bar, there is no uncertainty in the evidence that the defendant did make the confession. Although the witness would, in court, soften the blow of such evidence from the impact logically arising from her statement to the police, the fact remains that the confession was made. Whether or not the witness believed it or regarded it seriously would generally be irrelevant. Since she was permitted to state her conclusions, without objection, it probably was a factor which the jury could properly take into consideration in arriving at their conclusion. But her assessment of its persuasiveness is not the standard by which we gauge its probative value.

In *Tom* v. *State*, (1973) 261 Ind. 295, 302 N.E.2d 494, we reversed because the testimony which the State presented as substantial and probative had to be viewed out of the context in which it had been given in order to support the verdict. In the case before us, it was for the jury rather than the witness or this Court to determine the credibility of the confession and the weight to ascribe to it. Further, the circumstantial evidence which we previously related and concluded would not suffice standing alone, is consistent with the hypothesis of guilt and therefore reinforces the inferences drawn from the confession and renders its truthfulness more probable.

In *Rosell* v. *State*, (1976) 265 Ind. 173, 352 N.E.2d 750, we were confronted with a situation where a State's witness, while under a grant of immunity, confessed that he, rather than the appellant, had committed the crime. We declined to reweigh the evidence and to give greater force to that testimony than had been given to it by the jury. We there stated that the appellant's argument of insufficiency presumably was properly made to the jury but that it was misplaced on appeal. "That there were conflicts in the testimony of the State's witnesses which materially weakened its case does not alter the rules * * *." In *Rosell*, the jury apparently disbelieved the State's witness when he said that he, rather than the appellant, had committed the crime. Here, the jury either disbelieved the witness when she said that she did not believe the defendant's confession and that it was not intended to be taken seriously—or in the alternative, disagreed with her conclusion, in view of the other evidence. In either case, the jury acted within the boundaries of their prerogative and responsibility. It is only when we can say that no reasonable man could find the evidence had proved an accused guilty beyond a reasonable doubt that we can say that the evidence was insufficient, as a matter of law. Although different persons might reasonably have arrived at a different conclusion from that reached by the jury, the verdict will not be set aside for that reason. *Baker*

v. *State,* (1956) 236 Ind. 55, 138 N.E.2d 641. The conclusion reached by the jury in this case was one upon which reasonable minds might well have differed. Accordingly, we cannot disturb it as not sustained by the evidence.

We find no reversible error, and the judgment of the trial court is, therefore, affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 360 N.E.2d 1257.