NELLIE BUGG *v.* STATE OF INDIANA.

[No. 375S75.  Filed February 20, 1978.]

*Lawrence O. Sells,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Nellie Bugg was convicted of second degree murder in the Marion Criminal Court on April 9, 1974, and sentenced to fifteen to twenty-five years imprisonment. The killing in question occurred on November 3, 1972, in the home of appellant. On that date, police officers found the appellant in her bedroom and found the victim, the former husband of appellant, who was an Indianapolis police officer, dead in the bathtub. The victim's gun was in an adjoining hallway and four spent shells were found in the bathroom. The victim had two bullet wounds in the head, and one in his upper arm and upper body. Evidence indicated that the bullet wound in the upper body caused death, and that such bullet was fired by the victim's pistol. It is undisputed that appellant fired the fatal shot following an argument.

Appellant argues two errors in the proceedings of her trial below: (1) that the trial court permitted a police officer to testify as to statements made to him by appellant while appellant was incarcerated, and; (2) that there was insufficient evidence to convict the appellant for the offense of second degree murder.

I.

Appellant's first argument is that a police officer's testimony concerning statements made by appellant to him while she was incarcerated should not have been admitted, because appellant was not properly advised of her constitutional rights required by *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The relevant events surrounding appellant's contentions are as follows. On November 3, 1972, an Indianapolis police officer entered appellant's home and found her in one of the bedrooms and the deceased in the bathtub. At that time, appellant stated, "I shot him; there is the gun laying on the dresser drawers." Other officers arrived at the scene, and

one of them advised appellant of her constitutional rights, although she was not questioned at this time. No statements made by appellant on the day of the killing are being challenged. Rather, the statements in issue were made three days later, on November 6, to Sergeant Kirkham of the Marion County Sheriff's Department. Kirkham had known appellant, Nellie Bugg, for over five years. He was neither assigned to her case, nor was he working on it. However, he had heard from a matron at the Marion County Jail that appellant was not eating, was distraught and was going into hysterics, and that there was fear that appellant would collapse. Kirkham testified that he went to see appellant as a friend, tried to calm her down and asked her if she had any problems. She then told him, "well I guess I killed Tommie." Appellant then went on and kept talking, detailing circumstances of her relationship with the deceased leading up to the day of the killing. Sergeant Kirkham never advised appellant of her *Miranda* rights.

The trial court found that appellant had been advised of her *Miranda* rights at the time of her arrest, three days earlier. *Cf. Conrad* v. *State,* (1974) 262 Ind. 446, 317 N.E.2d 789; *Rogers* v. *State,* (1974) 262 Ind. 315, 315 N.E.2d 707. However, there was no testimony or evidence regarding exactly what rights had been read to her, either on direct examination of the arresting officers or on their cross-examination by appellant. The trial court then ruled that appellant's statements to Sergeant Kirkham were admissible on the basis that they were not made during a "custodial interrogation" within the meaning of *Miranda.* The objection to appellant's statements to Kirkham were not made on the basis of their general voluntariness, except that appellant stated in argument that because of her distraught condition she could not have understood her *Miranda* rights even if they had been read to her at this time. A determination of appellant's competency to make a *Miranda* waiver, however, is not necessary to support this statement's admissibility if

it was not in fact made during a "custodial interrogation" and thus fell outside of the *Miranda* requirements. *Kennedy* v. *State*, (1977) 267 Ind. 322, 370 N.E.2d 331.

It is settled that the procedural safeguards of *Miranda* only apply to what the United States Supreme Court has termed "custodial interrogation." *Oregon* v. *Mathaison*, (1977) 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; *Orozco* v. *Texas*, (1969) 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311; *Mathis* v. *United States*, (1968) 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381; *Maxey* v. *State*, (1969) 251 Ind. 645, 244 N.E.2d 650, *cert. denied*, (1970) 397 U.S. 949, 90 S.Ct. 969, 25 L.Ed.2d 130; M. SEIDMAN, THE LAW OF EVIDENCE IN INDIANA, pp. 99-103 (1977). This definitional prerequisite to defendant's argument based on a failure to give all or some of the *Miranda* warnings thus has two parts: first, a showing that the setting of the allegedly inadmissible confession was "custodial" within the meaning of *Miranda*, and second, a showing that what transpired between the authorities and the defendant at this place was "interrogation" within the meaning of *Miranda*. One line of our decisions deals with the first part of the requirement for giving *Miranda* warnings; the definition of "custodial." *See*, e.g., *Dillon* v. *State*, (1971) 257 Ind. 312, 275 N.E.2d 312; *Raines* v. *State*, (1971) 256 Ind. 404, 269 N.E.2d 378; *Owens* v. *State*, (1971) 255 Ind. 693, 266 N.E.2d 612; *Schmidt* v. *State*, (1970) 255 Ind. 443, 265 N.E.2d 219, *reh. denied*, (1971) 256 Ind. 218, 267 N.E.2d 554. In another line of our decisions, we have found that statements of defendants were volunteered and spontaneous, and not in response to "interrogation." *Kennedy* v. *State*, (1977) 267 Ind. 322, 370 N.E.2d 331; *Riddle* v. *State*, (1976) 264 Ind. 587, 348 N.E.2d 635; *Lockridge* v. *State*, (1975) 263 Ind. 678, 338 N.E.2d 275; *Jennings* v. *State*, (1973) 262 Ind. 476, 318 N.E.2d 358; *Hewitt* v. *State*, (1970) 261 Ind. 71, 300 N.E.2d 94; *New* v. *State*, (1970) 254 Ind. 307, 259 N.E.2d 696.

It is obvious that this appellant was in custody at the

time when she gave her oral admissions to Sergeant Kirkham. Just the same, under the circumstances presented, the trial court's ruling on the admissibility of this confession is correct without regard to the adequacy of her *Miranda* advisement. Sergeant Kirkham did not visit appellant in her jail cell for the purpose of questioning or interrogation, nor did he conduct such a procedure. Rather, he went as a friend to help calm her down, having learned that she was near collapse. He simply asked her if she was having any problems, and she began to relate a story about the crime in issue and kept talking. There was thus no "interrogation" here within the meaning of *Miranda,* and voluntary statements made any time during "custody" are admissible without *Miranda* warnings so long as there is no such questioning. *Cf. Pilcher* v. *Estelle,* (5th Cir. 1976) 528 F.2d 623, 624, *cert. denied,* (1976) 426 U.S. 953, 96 S.Ct. 3179, 49 L.Ed.2d 1192. In view of the facts presented here, neither the atmosphere of the stationhouse nor the length of appellant's custody casts any doubt upon the spontaneity and voluntariness of her statement. *Cf. New* v. *State,* (1970) 254 Ind. 307 at 314, 259 N.E.2d 696 at 700. Appellant's statements to Sergeant Kirkham were freely, voluntarily, and spontaneously given, and there was no error in their admission at trial.

## II.

Appellant also challenges the sufficiency of the evidence to support her conviction of second degree murder. Appellant argues that self-defense was established beyond contradiction and that there was no proof that the killing was done purposely and maliciously. Although appellant's testimony at trial was that she was physically attacked by the deceased on prior occasions and was fearful of being attacked again, other testimony indicates that immediately prior to the shooting she requested the deceased to take a bath; that she then went to fix the deceased a meal; and that she was nude when the shooting occurred.

In addition, the record shows that four shots were fired with three bullets striking the deceased, two in the head and one in the upper body and that his body was found in the bathtub. It is not this court's function to weigh the evidence. Rather, in determining the sufficiency of evidence, we look only at the evidence most favorable to the state and the reasonable inferences to be drawn therefrom. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Matthew* v. *State,* (1975) 263 Ind. 672, 673-74, 337 N.E.2d 821, 822. Applying this standard, we thus find substantial evidence of probative value from which the trier of fact could reasonably infer the appellant was guilty of second degree murder.

The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported at 372 N.E.2d 1156.