Ken MAIER, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 1180S419.

Supreme Court of Indiana.

July 13, 1982.

Susan K. Carpenter, Public Defender, W. Brent Gill, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Ken Maier, Jr., was found guilty by a jury in the Jay Circuit Court of the crimes of burglary, a class C felony according to Ind.Code § 35–43–2–1 (Burns Supp. 1982), and theft, a class D felony according to Ind.Code § 35–43–4–2 (Burns Supp. 1982). He was further found by the same jury to be an habitual offender according to Ind. Code § 35–50–2–8 (Burns Supp. 1982). The court sentenced him to consecutive terms of five (5) years on the burglary conviction, two (2) years on the theft conviction, and thirty (30) years for the habitual offender finding.

Six issues are raised in this direct appeal as follows:

1.   whether the trial court erred in overruling Appellant's Motion for a Continuance;

2.   whether the trial court erred in permitting, over objection, the testimony of co-actor witnesses Lonnie James and Jess Griffin;

3.   whether Appellant's sentencing under Indiana's Habitual Offender Statute should be vacated due to a finding that the statute is unconstitutional;

4.   whether the trial court erred in precluding defense counsel from informing the jury as to the penalty required by their finding Appellant to be an habitual offender;

5.   whether the trial court erred in refusing Appellant's tendered final instruction informing the jury that one of Appellant's prior felony acts was subsequently reestablished as a misdemeanor offense; and

6.   whether Appellant's convictions were supported by sufficient evidence.

The evidence shows that appellant Ken Maier, Jr., now age 35, had a friendship with two younger men: Lonnie James, now age 21 and formerly a runaway whom Maier once sheltered when James was fifteen; and Jess Griffin, now age 24 and formerly a neighbor and friend of Maier's for several years. Maier was reputedly in the radio repair business. He had received some formal education in electronics and reportedly held several communications licenses. The evidence developed that Maier kept a small trailer type vehicle next to his house which he claimed was his radio repair shop. His parole officer, however, testified that there were no signs identifying or advertising the business and that he was not aware that the shop was ever open for the public transaction of business. Appellant was evidently in the practice of taking radios and other communication equipment to various electronic "flea markets" or "ham fests" where he would sell them.

Both Lonnie James and Jess Griffin testified that late in the night of September 13, 1979, Maier took the two of them in his Toronado automobile from Steuben County to points in Jay County to illegally obtain radios. James further testified that a few

days prior to the 13th and during the daytime, Maier took him alone to Jay County to "look for a good location where we could get radios without much trouble." Specifically, Maier located business establishments that had antennae indicating there were transceiving radios on the premises. Appellant had previously equipped his car with a Bearcat Scanner, an 8-channel Motorola radio, several portable Motorola radios, and a set of switches capable of disconnecting the vehicle's brake lights, back-up lights and tail lights. In conjunction with their trip on the 13th, Maier gave to both James and Griffin screwdrivers, pliers, and two portable radios with which all three could keep in contact while Maier drove around in his car. James was also given a pair of wire snips, a crescent wrench and bolt cutters. Maier let the men out in the vicinity of the Jay County Farm Bureau Co-op property and instructed them that there were radios to be found in the trucks parked about the property. Appellant was always in touch with the two through his radio equipment. Several radios were taken from the trucks parked about the building. Griffin gained entrance to the Farm Bureau garage building with the aid of a screwdriver and took additional radios from the trucks parked inside the garage. James testified that he once called Maier over the portable radio to advise that he had found one older type of radio, and to ask him whether he should take it. When James and Griffin completed accumulating the radios, Griffin called Maier and told him to pick them up at the Portland Ready Mix cement factory, located across the road from the Co-op. Griffin took another radio from a cement truck parked at that location. The stolen radios were put into the trunk of Maier's automobile. As the three drove away, a radio antenna was spotted at the nearby C & C Lumber Company. Advising the others that there must be a radio inside, Maier let James and Griffin out at C & C before driving off again. James and Griffin broke one of the store's windows and gained entrance, but failed to find any radios inside. They gathered other items instead, including a key making machine, a printing calcu-

lator, a cash drawer with change, two chain saws, a circular saw, a jig saw, assorted tools, and an electric garage door opening mechanism. They then called Maier on one of their portable radios and told him they were ready to be picked up. The newly taken items were loaded into the trunk, except for the garage door opener, which was put on the back seat of Maier's automobile. Since James and Griffin had not found a radio, Maier said that he would personally go in and look around. While inside, James and Griffin called Maier and told him they were going to drive away because they saw a car approaching. Maier told them to go ahead. As they started to drive away, James put a throw rug over the box containing the garage door opener. The car they spotted was driven by Jay County Deputy Sheriff Robert P. May, Jr., who was on regular patrol. May became suspicious when he saw Maier's auto pull out of the empty C & C lot around 3:00 a.m. He stopped James and Griffin in Maier's car. As May was checking Griffin's license and the car's registration, he noticed the partially covered garage door opener box and recognized it as one sold by the C & C Lumber Company. May called for additional police officers. With their assistance, it was determined that at least two break-ins had occurred and that at least some of the property in the possession of James and Griffin was stolen. It was also determined that the stopped automobile belonged to Maier. Maier was later apprehended by the Steuben County police. Both Lonnie James and Jess Griffin confessed to their participation in the break-ins. Both testified in Appellant Maier's trial, unequivocally implicating Maier in the burglaries and thefts as above set out.

I

Appellant contends that the trial court abused its discretion by refusing to grant his Motion for a Continuance. The record shows that Appellant retained counsel on November 1, 1979. Counsel took an active part in Appellant's defense from that point on. On January 25, 1980, the trial court set

the cause for a jury trial on June 10, 1980. Appellant's Motion for a Continuance was filed on May 27, 1980, about two weeks before the trial date. The substance of the Motion was that Appellant, though claiming not to be an indigent, could not entirely pay his attorney's fees thereby forcing his attorney to work on other cases to the exclusion of his case. Appellant asserts that because of the complexity of his case, counsel needed to devote nearly all of his time to Appellant's case to prepare it adequately for trial. It is claimed that in the circumstances, this couldn't be done without imposing a "great financial hardship on counsel affecting his ability to represent either the defendant herein or his other clients." Appellant suggests that his financial problems were due to the "current economic situation prevailing in the State." The Motion requested a continuance for at least sixty days.

The trial court heard the Motion and took it under advisement, before denying it on June 2, 1980. On that same date, the State filed against Appellant the additional charge of being an habitual offender. The record indicates that Appellant never presented the filing of the habitual criminal count to the trial court as supplemental support for his May 27th motion and never filed an additional Motion for a continuance based on his need to prepare for defending against the new charge. This issue was duly waived. *Wallace v. State*, (1981) Ind., 426 N.E.2d 34, 40. Appellant is left with the claim that because his attorney was unable to devote his full time to preparing this case for the trial when actually held, Appellant was denied the effective assistance of counsel and therefore must have his convictions reversed.

■ Appellant's Motion was not verified as it did not assert any of the grounds included in Ind. Code § 35–1–26–1 (Burns 1979). The granting of the motion was therefore within the discretion of the trial court pursuant to Ind.R.Tr.P. 53.4. Denial of such a motion is reversible error only when the court abuses its discretion and there is a showing from the record that the defendant was prejudiced. *Harris v. State*,

(1981) Ind., 427 N.E.2d 658; *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228. In *Drollinger, supra*, we noted that an effective denial of the Sixth Amendment right to assistance of counsel would result if counsel did not have adequate time to prepare for trial. This record does not show that such was the fact, however. In this case, counsel appeared for defendant some seven months before the date set for trial. The trial date was made with some five months of advance notice. Appellant's Motion for a Continuance did not assert any difficulty in obtaining witnesses, in making discovery or in anything else pertinent to effectively trying this case. The Motion only generally asserted that counsel could not give his full attention to this trial. Appellant does not point out any specific deficiency in his defense causing him to be prejudiced by this ruling. The State points out that there was enough effort put in by Appellant's counsel in this case to result in a record of over seven hundred pages. Included is nearly three hundred pages of discovery material, including extensive depositions of Lonnie James and Jess Griffin. All the witnesses at trial appear to have been vigorously cross-examined and all issues raised by the evidence appear to have been presented to the jury and to the trial judge. The granting or denial of Appellant's Motion was properly within the discretion of the trial judge and it does not appear here that there was any abuse of that discretion in this case. We hold, therefore, that there are no grounds presented for finding that the trial judge improperly denied Appellant's Motion for Continuance.

II

■ Appellant claims it was error for the trial court to admit into evidence the testimony of co-actors James and Griffin. Both James and Griffin testified for the State and both implicated Maier in the burglaries and thefts. Each of them testified according to the plea bargains each had entered into with the State. In pursuance of their respective plea bargains, James and Griffin were each convicted of Conversion, a Class

A misdemeanor. They were fined $500 and given one year suspended sentences with probation. Their plea bargains also provided that any other charges against them would be dismissed after each had appeared and testified for the State in its action against Maier. Maier claims that the State never showed that James and Griffin had consented to testify and that all of the conditions of the State's plea bargains were not disclosed to the jury. On the stand, both James and Griffin stated that each had willingly consented to testify. In addition, they both fully disclosed the conditions of the plea bargains they had entered into with the State, and both indicated that it was their understanding that they had agreed to testify for the State against Maier. They both also stated that they were testifying to the truth of the facts as they knew them. Appellant does not suggest any instance where the State failed to inform him as to the plea bargains made with either Griffin or James. He does not point out any condition of the plea bargains that is apparent but was not disclosed. He also does not point out any pertinent information involving the plea bargains which was kept from the jury. Both of these co-actors testified before the jury as to their personal involvement in the offenses. Both stated that if they did not testify, they expected to be further prosecuted. We have held that it is not objectionable when a witness' consent to testify is motivated by a desire to obtain more lenient treatment by the State, so long as this fact is presented to the jury for its consideration in determining the credibility of the witness. *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228, 1241. *See also Gordy v. State,* (1980) Ind., 385 N.E.2d 1145. The facts surrounding the testimony of James and Griffin in the instant case were adequately presented to the jury for their consideration. The trial court properly permitted their testimony.

### III

■ Appellant asks us to again review the constitutionality of Indiana's Habitual Offender Statute, Ind. Code § 35–50–2–8 (Burns Supp.1982). Precisely the same is-

sues now raised as to the constitutionality of this statute were previously presented to this Court in *Wise v. State,* (1980) Ind., 400 N.E.2d 114, 118. We reaffirm our holdings in *Wise* on these issues. Appellant's sentence is not unconstitutional.

### IV

■ Appellant further claims it was error for the trial court to refuse to read an instruction to the jury informing them of the penalty to result from finding the Appellant to be a habitual criminal. The trial court also refused to read to the jury the entire habitual criminal statute which would include the penalty section. We have clearly and repeatedly held that such information is irrelevant to the jury's consideration and it therefore is improper for a court to inform the jury of the penalty involved in a finding of habitual criminality. *Little v. State,* (1981) Ind., 415 N.E.2d 44. Appellant is again requesting this Court to reexamine its prior holdings in this area and to reverse them. We are not offered, however, any compelling reason for doing so. We affirm our position on this issue as stated in *Little, supra.* The trial court committed no error by refusing these instructions.

### V

One of the two prior unrelated felonies of which Appellant was charged by the State to have been convicted was that of automobile banditry. At the time of Appellant's conviction for automobile banditry, that charge was a felony. Since that time, automobile banditry has been reduced by the legislature to a misdemeanor. Appellant asked in his tendered final instruction No. 1 that the jury be advised that although automobile banditry was a felony at the time defendant committed it, it is now a misdemeanor. The trial court refused the instruction.

■ This issue was resolved by this Court in *Ross v. State,* (1980) Ind., 413 N.E.2d 252, 257, as follows:

"The determination of whether or not an offense is a misdemeanor or a felony is based on the law at the time of the commission of the act. Prior unrelated felony convictions are viewed as they existed at the time they occurred for habitual criminal proceedings purposes. *Wise v. State*, (1980) Ind., 400 N.E.2d 114. Therefore, it was not error to overrule appellant's motion to dismiss or to refuse to give the instruction appellant requested, i.e., that at the present time, the law of Indiana is that carrying a handgun without proper license constitutes a class A misdemeanor."

Accordingly, Appellant was not entitled to his instruction No. 1 and the trial court properly refused it.

## VI

Appellant also claims there is insufficient evidence to sustain his theft and burglary convictions and to sustain his habitual criminal finding. In reviewing the sufficiency of the evidence, this Court considers the evidence which is most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Anderson v. State*, (1981) Ind., 426 N.E.2d 674; *Wise v. State*, (1980) Ind., 400 N.E.2d 114. Uncorroborated testimony of an accomplice will support a conviction so long as the evidence and the inferences which may be drawn therefrom permit a reasonable trier of fact to find the existence of each element of the crime charged beyond a reasonable doubt. *Taylor v. State*, (1981) Ind., 425 N.E.2d 141; *Kilgore v. State*, (1979) Ind., 391 N.E.2d 820; *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218.

The Information in Appellant's theft prosecution accused Appellant of exerting unauthorized control over the property of the Jay County Farm Bureau, said property being specifically described as four Johnson two-way radios and one Regency citizens band radio. The evidence showed that the Jay County Farm Bureau owned the four Johnson radios but that the Regency citizens band radio was personally owned by an employee of the Bureau. Appellant asserts that this variance between the Information and the proof made at trial regarding ownership of the stolen property is fatal. We think not. In *Owens v. State*, (1971) 255 Ind. 693, 266 N.E.2d 612, the indictment charged the theft of one blouse, two pairs of pants and three sweaters. Evidence of the theft of only one sweater was presented. This Court held that proving the theft of one sweater would be sufficient for a conviction of theft, and no further proof was necessary. It does not need to be shown that the defendant was guilty of the theft of all of the items. It is sufficient if he is found guilty of the theft of one or more of the items, as in the present case.

Appellant further claims that he is charged here as a principal but that the evidence shows he was only an accessory. He bases this argument on the fact that the evidence established that only James and Griffin entered the Co-op's building and took items therefrom. It has been clearly established, however, that we no longer have specific charges of being an accessory before or during the fact. Our statute explicitly provides that a person who assists in a crime shall be charged as a principal. "A person who knowingly or intentionally aids, induces, or causes another to commit an offense commits that offense." Ind.Code § 35–41–2–4 (Burns 1979). The evidence showed that Maier acted in concert with James and Griffin to commit or to cause the commission of these crimes. This is sufficient to sustain Appellants' conviction for them. *Eaton v. State*, (1980) Ind., 408 N.E.2d 1281; *Kyles v. State*, (1979) Ind. App., 391 N.E.2d 642.

Appellant finally claims that there is insufficient evidence to support his being found a habitual criminal since there was a failure of proof as to whether he had previously committed the crime of automobile banditry. The State presented into evidence certified documents proving that one Kenneth K. Maier, Jr., had been convicted of automobile banditry by the LaGrange

Circuit Court in 1971. The State also presented Maier's parole officer who testified that Maier once stated to him that Maier had been convicted in 1971 of automobile banditry in LaGrange, Indiana. Appellant argues that this was not sufficient evidence to personally connect him with the documentation proving that he had, in fact, been convicted of this prior felony. We disagree. The testimony of the parole officer proved a connection between the documents and this Appellant such that the jury had before it sufficient evidence from which it could justly infer that Maier was the one who had been convicted of the prior crime. Accordingly, we hold that the jury had sufficient evidence to find Maier to be an habitual offender.

Finding no reversible error, we affirm the trial court in all respects.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.