Dalton Russell MINNEMAN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 481S103.

Supreme Court of Indiana.

Nov. 12, 1982.

Rehearing Denied Jan. 17, 1983.

Susan K. Carpenter, Public Defender, Jay Rodia, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Dalton Russell Minneman, was convicted of Burglary, Ind. Code § 35–43–2–1 (Burns Repl.1979), and of being a habitual offender, Ind.Code § 35–50–2–8 (Burns Repl.1979) at the conclusion of a jury trial in Rush Circuit Court on August 12, 1980. Appellant was sentenced to thirty-five (35) years imprisonment. He now appeals.

Appellant raises nine errors on appeal, concerning:

1. Whether the appellant voluntarily confessed and voluntarily consented to searches of his residence.

2. Whether it was reversible error to deny the appellant's motion for discharge.

3. Whether it was reversible error for the habitual criminal allegation to allege that the appellant committed more than two prior felonies.

4. Whether it was reversible error to deny the appellant's motion to dismiss the habitual criminal count.

5. Whether this Court should reverse case precedent regarding the inadmissibility of polygraph tests.

6. Whether the Indiana Habitual Offender statute is constitutional.

7. Whether it was reversible error for the trial court to receive into evidence State's Exhibits H–2 and H–4.

8. Whether it was reversible error for the jury to hear final instruction No. 6.

9. Whether it was reversible error for the jury to hear final instruction No. 3.

The evidence most favorable to the State reveals that sometime during the night of February 20–21, 1979, the Hair Affair Beauty Salon in Rushville, Indiana, was burglarized. Barbara Reynolds, the owner of the salon, discovered the burglary the following morning when she opened up for business. The salon had been ransacked, about $65.00 in cash was missing, and the boxes in which the beauticians placed tips were missing. This burglary was reported to the Rushville police.

The salon was burglarized again on March 8, 1979. Officer Weber of the Rushville Police Department investigated the burglary. Weber discovered an unusual footprint, measured it, and posted the shoe print on the bulletin board of the police station. On April 1, 1979, Barbara Reynolds, while speaking with a friend over the telephone, noticed a prowler outside the salon. She went outside, confronted the man and demanded his name. He responded "Dalton Minneman." Reynolds identified the appellant, at trial, as the man she caught outside her salon. Minneman fled and Reynolds notified the police. The police went to Minneman's residence and he agreed to go to the police station and answer some questions. Minneman allowed the police to search his home for the shoes he had been wearing earlier. Later, Minneman gave a statement admitting his involvement in the Hair Affair Salon burglary.

I

Prior to trial, Appellant filed a Motion to Suppress on October 29, 1979. In the motion Appellant alleged that his confession and all physical evidence obtained because of the confession should be suppressed because "the confession was not, knowingly, intelligently, and voluntarily given." The trial court, after a hearing on the motion, denied Appellant's request on January 23, 1980. On appeal, Appellant argues that the motion should have been granted and State's exhibits 2, 5, 6, and 7 should not have been introduced into evidence.

Exhibit 2 was a small money or coin bank, and Exhibits 6 and 7 were the same Permission to Search forms that Appellant executed for the police. When those three exhibits were offered into evidence, counsel for Appellant asked some preliminary questions but made no objection to their admission into evidence. It has long been the rule in Indiana that although a motion to suppress has been overruled prior to trial, when the evidence is later offered at trial no error will be preserved unless there is an objection at that time. *Haynes v. State,* (1982) Ind., 431 N.E.2d 83, 85; *Lock v. State,* (1980) Ind., 403 N.E.2d 1360, 1367. Appellant's failure to object to the admission of State's Exhibits 2, 6, and 7 has resulted in a waiver of error on appeal.

Exhibit 5 was Appellant's statement in which he admitted burglarizing the Hair Affair Beauty Salon. Appellant argues on appeal that the evidence shows that he did not knowingly, intelligently, and voluntarily waive his Fourth Amendment right to be free of governmental intrusions when he accompanied the police to the station in order to answer questions about the burglary. Appellant points to *Morris v. State,* (1980) Ind., 399 N.E.2d 740, stating that a warrantless arrest not supported by probable cause is unlawful, and therefore his statement should have been suppressed at trial.

After reviewing the record we find that *Morris* is not applicable to Appellant's situation. There is no indication that Appellant was arrested prior to the questioning by the police. The following testimony was elicited from Officer Servies at the hearing on Appellant's motion to suppress:

"Q. Did you state to Mr. Minneman to come with you or what did you say to him?

A. I ask (sic) him if he would come to the police station for a few questions.

Q. And his response was?

A. 'Yes.'

Q. If he had replied 'no,' what, if anything would you have done?

A. Nothing.

Q. Would you have just turned around and went back to wherever you were going?

A. I would probably have gone out to the police car and done some checking.

Q. And after you did your checking, what would you have done?

A. It would depend on what I found out checking."

Officer Servies stated that Appellant was not placed under any restraints and would have been free to leave the police station at any time. The officers wanted to interrogate Appellant because the owner of the beauty salon told the police that the man she caught trying to enter the salon identified himself as Dalton Minneman. The police were justified, for investigative purposes, in wanting to question Appellant about the burglary. Appellant himself admitted at the hearing that he was not under arrest nor was he forced or coerced into signing or saying anything. There is nothing to indicate that the Appellant was the victim of an illegal detention.

The only other question to answer is whether the appellant was properly advised of his constitutional rights before giving a statement to the police. It is well settled that the procedural safeguards of *Miranda* apply only to what the United States Supreme Court has termed "custodial interrogation." *Oregon v. Mathiason,* (1977) 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; *Orozco v. Texas,* (1969) 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311; *Bugg v. State,* (1978) 267 Ind. 614, 372 N.E.2d 1156; *Maxey v. State,* (1969) 251 Ind. 645, 244 N.E.2d 650, *cert. denied,* (1970) 397 U.S. 949, 90 S.Ct. 969, 25 L.Ed.2d 130. We held in *Dickerson v. State,* (1972) 257 Ind. 562, 567, 276 N.E.2d 845, 848:

"[A]n interrogation, initiated by the police and conducted in the compelling atmosphere of the interrogation room at the police station, at a time the investigation had focused on the accused, constitutes circumstances which would indicate a significant deprivation of freedom so as to require the interrogating officers to advise the suspect of his constitutional rights."

Upon arrival at the police station, Appellant was advised of his rights under *Miranda* by Officer Servies, and Appellant signed the waiver of rights form. Appellant admitted that his constitutional rights were read to him prior to any questioning. We see no error in admitting his statement into evidence.

II

Appellant's next argument concerns his Motion to Dismiss under Ind.R.Crim.P. 4(B)(1). Appellant contends that under Rule 4(B)(1) a court has the duty to bring a defendant to trial within the required time in the statute and because the court failed to set Appellant's case for trial within that period, the trial court committed error.

Rule 4(B)(1) provides in pertinent part: "If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar."

The relevant sequence of events pertaining to this issue are as follows:

| | |
|---|---|
| July 25, 1979 | Information filed. |
| August 9, 1979 | Motion for Early Trial filed. |
| October 29, 1979 | Motion to Compel Discovery and Motion to Suppress filed. |
| October 30, 1979 | Motion for Fast and Speedy Trial filed. |
| November 26, 1979 | Hearing on Motion to Suppress begun and continued. |
| January 3, 1980 | Hearing on Motion to Suppress begun and continued at Appellant's request. |
| January 22, 1980 | Hearing on Motion to Suppress completed. |
| January 23, 1980 | Motion to Suppress denied. |

| | |
|---|---|
| March 4, 1980 | Trial date set for June 16, 1980. |
| March 8, 1980 | Objection to trial setting filed by Appellant. |
| May 1, 1980 | Motion to Dismiss for denial of speedy trial filed. |
| June 4, 1980 | Motion to Dismiss denied. |

■ When a defendant files a motion for early trial under Ind.R.Crim.P. 4(B), such filing constitutes an abandonment of previous motions for early trial filed by that defendant. *Rutledge v. State,* (1981) Ind., 426 N.E.2d 638. The law requires the movant to maintain a position which is reasonably consistent with the request he has made. *Utterback v. State,* (1974) 261 Ind. 685, 310 N.E.2d 552. Therefore, when Appellant filed his motion for speedy trial on October 30, 1979, he abandoned the earlier motion filed on August 9, 1979, and we are no longer concerned with that motion.

■ When Appellant filed his motion for early trial on October 30, 1979, there were two other motions pending at the time: Motion to Suppress and Motion to Compel Discovery, both filed by Appellant on October 29, 1979. The seventieth day from October 30, 1979 fell on January 8, 1980. However, on January 3, 1980, at Appellant's request, the hearing on his Motion to Suppress was continued to January 22, 1980. The position of the State is well taken that by moving for a continuance beyond the seventy-day period, particularly when that time period was used up by his delaying motions, the appellant abandoned his speedy trial motion. This Court held in *Serrano v. State,* (1977) 266 Ind. 126, 360 N.E.2d 1257, that where the record is devoid of any indication during the seventy-day period that the defendant is seeking a speedy trial, the court may conclude that the defendant's speedy trial motion is not bona fide. The same can certainly be said of this case since there were pre-trial motions filed the day before the filing of the Motion for Fast and Speedy Trial which were known to and did, in fact, delay the matter before a trial date could be set. As we stated above, the delay used up more than the seventy days contemplated in the motion. As a matter of fact, delays appear

to have been apparent even up to March 4, 1980 when the court set the trial for June 16, 1980. The trial court properly overruled the May 1, 1980 motion to dismiss.

### III

■ Count II charged Appellant with being a habitual offender. On February 1, 1980, the State filed an amended information which included a change in Count II. The amended count contained allegations of four prior felonies committed by Appellant. Prior to trial Appellant filed a motion asking the trial court to strike, as prejudicial surplusage, any and all allegations of more than two prior felony convictions. The trial court overruled Appellant's motion.

Appellant does not allege that any of the procedural aspects of the habitual offender proceeding were in error; instead, he alleges that the two additional felony convictions prejudiced his right to a fair trial. While Ind.Code § 35–50–2–8(a) (Burns Supp.1982) requires that the State need only prove two prior unrelated felony convictions, proof of three or more felony convictions is mere surplusage under the requirements of the habitual criminal statute. *Collins v. State,* (1981) Ind., 415 N.E.2d 46, *cert. denied,* (1981) 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 1851; *Jessup v. State,* (1971) 256 Ind. 409, 269 N.E.2d 374. There is no error here.

### IV

■ Prior to trial, Appellant moved to dismiss the habitual offender count in the Information because "... nowhere in Count II of said Information is there any allegation that the individual bringing the charge was ever duly sworn upon his oath as is required pursuant to I.C. 35–3.1–1–2(a)." The trial court overruled Appellant's motion on August 17, 1979.

Ind.Code § 35–50–2–8(a) (Burns Repl. 1979) provides that "[t]he state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated

two (2) prior unrelated felony convictions." The statute provides that the information itself shall contain these allegations and provides that it be on a separate page so the jury will not be informed at that time of the defendant's prior convictions. This procedure was spelled out in *Lawrence v. State,* (1972) 259 Ind. 306, 286 N.E.2d 830 and has been reaffirmed in many recent opinions. *Griffin v. State,* (1982) Ind., 439 N.E.2d 160; *Dorton v. State,* (1981) Ind., 419 N.E.2d 1289; *Mitchell v. State,* (1979) Ind., 398 N.E.2d 1254. Examining the habitual offender count in the record, we find that it was taken under oath, that it was on a separate page, that it listed the prior unrelated felony convictions, that it identified Ind.Code § 35–50–2–8 as the governing statute, and that it was signed by the prosecuting attorney. All of this accords with the proper procedure in habitual offender charges. The trial court did not err in denying Appellant's motion.

## V

The prosecutor filed a motion *in limine* requesting that the appellant be prohibited from stating that he had taken or would be willing to take a polygraph examination. The trial court granted the motion and issued the following order:

"IT IS THEREFORE ORDERED AND DECREED that [Appellant], his attorney and any defense witnesses are prohibited at the trial of this cause from in any way suggesting, mentioning or implying that [Appellant] has taken or would be willing to take a polygraph examination in this or any other cause."

 Appellant, although he is aware that the law in Indiana holds that the evidence of polygraph examination is inadmissible absent a waiver by the opposing party, requests this Court to reconsider our views stated in *Robinson v. State,* (1974) 262 Ind. 463, 317 N.E.2d 850, and *Zupp v. State,* (1972) 258 Ind. 625, 283 N.E.2d 540. We still agree that in view of the unreliability of polygraphs, *Vacendak v. State,* (1976) 264 Ind. 101, 340 N.E.2d 352, *cert. denied,* (1976) 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125,

"the rule prohibiting reference to polygraph evidence absent waiver or stipulation . . . is properly applied to prohibit a defendant from stating that he offered to take a polygraph test." *Moore v. State,* (1977) 267 Ind. 270, 274, 369 N.E.2d 628, 630. There was no error in the trial court's granting of the state's motion *in limine.*

## VI

 Appellant asks us to review once again the constitutionality of Indiana's Habitual Offender Statute, Ind.Code § 35–50–2–8. Appellant does not give any persuasive argument why the statute is unconstitutional. Precisely the same issues now raised as to the constitutionality of this statute were previously presented to this Court in *Maier v. State,* (1982) Ind., 437 N.E.2d 448 and *Wise v. State,* (1980) Ind., 400 N.E.2d 114. We reaffirm our holdings that the habitual offender statute is constitutional.

## VII

 The State, during the habitual offender phase of the trial, sought to introduce State's exhibits H–2 and H–4 into evidence. Defense counsel objected to their introduction, claiming that the exhibits were not properly authenticated pursuant to Ind.Code § 34–1–17–7 (Burns 1973). The trial court overruled these objections and admitted exhibits H–2 and H–4 into evidence. H–2 dealt with Appellant's prior felony conviction in Louisiana and H–4 dealt with his prior felony conviction in California.

§ 34–1–17–7 reads as follows:

"—Exemplifications or copies of records, and records of deeds and other instruments, or of office books or parts thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office in this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his

custody, and the seal of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer. [Acts 1881 (Spec.Sess.), ch. 38, § 329, p. 240.]"

In *Griffin v. State,* (1981) Ind., 415 N.E.2d 60, we held that a probable cause affidavit, an information, and a criminal docket sheet, all under the same circuit court number and certified by the circuit court clerk as being true and complete copies of the records of the case were sufficient to prove the defendant's prior felony conviction. Exhibit H–2 contained many documents, including Appellant's fingerprints, his conduct report while in prison, his presentence incarceration credit, an order informing the sheriff to transport Appellant to prison in order to serve a four year term for burglary, the minutes of the hearing where Appellant pleaded guilty to burglary, and the information filed against Appellant. All documents were certified by Jewel Williams, record clerk and legal custodian of the records of Dixon Correctional Institute, to be true and exact copies of the record in the case. H–4 contained a probation order, complaint, and a change of plea to guilty signed by Appellant. These documents were certified by Robert D. Zumwalt, Clerk of San Diego County, to be true and correct copies of the original documents pertaining to Appellant's conviction for burglary. Both exhibits are sufficient to prove Appellant's prior convictions and there was no error in admitting them into evidence.

## VIII

Appellant objected to the trial court's final instruction No. 6 which reads as follows:

"You are further instructed that the State is not required to make proof of felonious intent, as a fact by direct and positive evidence. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the defendant with the felonious intent charged in the information. A determination of the defendant's intent may be arrived at by the jury from a consideration of the defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points."

Ind.R.Tr.P. 51(C) provides in part: "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly* the matter to which he objects and the grounds of his objection." (emphasis added). Ind.R.App.P. 8.3(A)(7) provides in part: "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Appellant only made a general objection to instruction No. 6 at trial, but on appeal he claims that it has an overreaching effect on a matter properly left to the jury. We find that the failure to make a distinct objection at trial has resulted in a waiver of this issue on appeal. *Mathes v. State,* (1982) Ind., 437 N.E.2d 51, 52; *Murphy v. State,* (1977) 267 Ind. 184, 196, 369 N.E.2d 411, 417.

In addition, this same instruction has been approved in prior cases and correctly states the law in Indiana. *Luckett v. State,* (1973) 158 Ind.App. 571, 303 N.E.2d 670. There was no error in the giving of the instruction.

## IX

Finally, Appellant objected to the giving of final instruction No. 3 during the habitual offender phase of the trial. Instruction No. 3 reads as follows:

"You are instructed that the term 'felony conviction' means a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year."

Again, as referred to above in Issue VIII, Appellant has waived any error by failing

to make a distinct and specific objection. *Mathes, supra; Murphy, supra.* We also fail to see how this instruction harmed Appellant since the language used is identical to Ind.Code § 35–50–2–1 (Burns Repl.1979), which defines a "felony conviction."

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, J., concur.

PRENTICE, J., dissents with separate opinion in which

HUNTER, J., concurs.

PRENTICE, Justice, dissenting.

I dissent to the majority's conclusion upon Issue II. This case marks the first time we have ever disposed of a claimed violation of the right to a speedy trial solely upon a perception that the motion therefor was not bona fide. The record discloses a violation of Defendant's right to a speedy trial under Ind.R.Crim.P. 4(B), which was timely brought to the court's attention.

The majority is correct to the extent that under *Rutledge v. State,* (1981) Ind., 426 N.E.2d 638, the October 30, 1979 early trial motion superseded the August 9, 1979 early trial motion. However, by adopting the State's untenable position, it ignores the mechanics of Ind.R.Crim.P. 4(F), which provides in pertinent part:

> "When a continuance is had on motion of the defendant, or delay in trial is caused by his act, any time limitation contained in this rule shall be extended by the amount of the resulting period of such delay caused thereby."

Under Criminal Rule 4(F) the time during which Defendant's motion to suppress pended (October 29, 1979 until January 23, 1980) was a delay chargeable to Defendant. *McGary v. State,* (1981) Ind.App., 421 N.E.2d 747, 750. However, the pendency of such motion is not a circumstance from which we can conclude that Defendant did not really want a speedy trial.

In this case the motion simply tolled the seventy day limitation until January 23, 1980 and the State had seventy (70) days from that date until April 2, 1980 to bring Defendant to trial. On March 8, 1980, the date Defendant objected to the trial setting of June 16, 1980, there remained twenty-five (25) days in which to bring him to trial under Ind.R.Crim.P. 4(B)(1), but the trial court overruled the objection and stated no reason for the ruling.

The provisions of criminal rule 4 provide several bona fide bases for delaying the trial beyond the arbitrary time limit of the rule, and this Court has acknowledged that the trial court has discretion to extend the date where exigent circumstances warrant. *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1265, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. However, the record is devoid of any justification for overruling the timely objection to the setting.

Although the State has not done so, it might be argued that inasmuch as Defendant's objection to the trial setting referred specifically to a violation of his August 9, 1979 early trial motion, rather than to his subsequent, and prevailing, motion of October 30, 1979, the trial court may have been misled. The record, however, demonstrates that the trial setting of June 16, 1980 was also in violation of the August 9, 1979 motion. Hence the erroneous reference is of no significance.

Following the formula mandated by criminal rule 4(F) and counting from the August 9, 1979 motion, the following delays were chargeable to Defendant by his act:

| ACT | TOTAL DELAY |
|---|---|
| Two continuances of arraignment requested by Defendant July 26, 1979 (August 9, 1979) to September 7, 1979 | 29 days |
| September 7, 1979 to September 21, 1979 | 14 days[1] |

[1] We have charged a defendant, who filed a speedy trial motion, with delay caused by a continuance that he requested without reference to the reason for the continuance. *Little v. State,* (1981) Ind., 415 N.E.2d 44, 45; *Parks v. State,* (1979) Ind., 389 N.E.2d 286, 289; *Ea-ston v. State,* (1972) 258 Ind. 204, 206, 280 N.E.2d 307, 308; *Moreno v. State,* (1975) 166 Ind.App. 441, 454, 336 N.E.2d 675, 683. *See Coffey v. State,* (1973) 156 Ind.App. 363, 296 N.E.2d 663 (three year delay held against defendant's claim of a constitutional violation of

| ACT | TOTAL DELAY |
|---|---|
| Defendant's motion for change of Judge September 25, 1979 to October 17, 1979 | 22 days |
| Defendant's motion to suppress filed October 29, 1979; denied January 23, 1980 | 86 days |
| Total delay chargeable to Defendant | 151 days |

Counting from August 9, 1979 the record demonstrates that the State had a total of two hundred twenty-one (221) days, or until March 18, 1980 to bring Defendant to trial. Consequently, the setting of June 16, was an impingement upon Defendant's rights under the rule, which the court was bound to recognize when he brought the matter to its attention by his objection on March 8, 1980.

The majority's reliance upon the dicta in *Serrano v. State,* (1977) 266 Ind. 126, 360 N.E.2d 1257, is also misplaced. In that case the Court stated that there was nothing in the record to show that the defendant had sought an early trial where it appeared that he had not objected at the time the trial court had set the trial for a date beyond the seventy (70) day limitation. Clearly in that case, it was the defendant's failure to make a timely objection to the trial setting, not his having previously filed assertedly dilatory motions, which warranted the court in denying his motion for discharge. A Defendant who moves for an early trial is not required to elect between his early trial rights and his right to file pretrial motions, dilatory or otherwise. *Cf. State ex rel. Wickliffe v. Marion Criminal Court,* (1975) 262 Ind. 219, 222, 328 N.E.2d 420, 422 (Defendant is not required to take affirmative action to bring himself to trial under criminal rule 4(B) other than to object, in a timely fashion, to a trial setting which violates the rule and to file a timely motion for dismissal.) It has never been held that causing a delay operates as an abandonment of an early trial motion. Rather, it

the right to a speedy trial.) This is not to say that all delays occasioned by continuances requested by a defendant are immediately chargeable to him, *see Collins v. State,* (1975) 163 Ind.App. 72, 75, 321 N.E.2d 868, 871 (delay caused by continuance to allow defense counsel to prepare adequately for trial is not chargeable to a defendant under Criminal Rule 4(A)) (dicta); however neither Defendant nor the State

merely extends the time allowed to the State. Ind.R.Crim.P. 4(F).

The majority's opinion effectively eviscerates the provisions of Criminal Rule 4(F) from the scheme of the accused's speedy trial rights. It denigrates the entire rule by forcing a Defendant to elect between preserving his right to a speedy trial and litigating before the trial the many issues, including Federal questions, which may arise prior to trial. In the alternative the majority imposes an onerous burden upon defense counsel, who will now have to reassert a request for a speedy trial on a regular, perhaps daily, basis to prevent the court from construing his pre-trial motions as a relinquishment of the request for a speedy trial. The language of Criminal Rule 4(F) extends the time limits contained in *all* of the rule's subdivisions. It does not posit an investigation into the intent behind a Defendant's motion, and in conjunction with our prior case law, it does not authorize the visitation of a waiver upon a defendant, who, in this case, could not complete the hearing on a motion to suppress in one day due to the absence of a witness. An accused's desire to assert all the rights which the system affords him and his subsequent actions in support thereof do not constitute a position inconsistent with the request for a speedy trial. The only condition precedent to preserving a Criminal Rule 4(B) motion is that Defendant object in a timely fashion if the trial court proposes a trial date beyond the seventy day limitation. *Utterback v. State,* (1974) 261 Ind. 685, 687–88, 310 N.E.2d 552, 553–54.

In the case at bar, Defendant objected within four (4) days following the trial setting,[2] at which time, twenty-five (25) days remained to bring him to trial under the October 30, 1979 motion. The State makes

has argued that he should not be charged with the delay of the arraignment which he requested.

2. Defendant's objection to the trial setting bears a file stamp of March 8, 1980 and a certificate of service by mail dated March 5, 1980.

no claim that this objection was not timely, and the record contains nothing to suggest that it was not timely.

The State's arguments are without merit. The record discloses that Defendant objected, in a timely fashion, to a trial setting which, after allowances for all delays chargeable to him, was for a date beyond the seventy day limitation of both his speedy trial motions. Consequently, overruling Defendant's timely May 1, 1980 motion to dismiss was error, which, in my judgment, requires the judgment of the trial court to be reversed.

HUNTER, J., concurs.