Norbert M. Neipp, Appellee, v. Clarence A. Toolen, Administrator of Estate of Martin Neipp, Deceased, et al., Defendants.
Appeal of Rose Neipp Plocueani et al., Appellants.

Gen. No. 41,790.

Opinion filed January 19, 1942. Rehearing denied February 2, 1942.

NELSON, SLATER & BOODELL, of Chicago, for appellants; DRENNAN J. SLATER and LOUIS A. McLEAN, both of Chicago, of counsel.

JOSEPH A. MEADE, of East Chicago, Indiana, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

April 21, 1927, Martin Neipp and his wife, Mary, made their respective wills; the wife predeceased her husband; thereafter, November 2, 1939, he made another will; he died November 18, 1939.

Plaintiff is an adopted son of Martin and Mary Neipp. Being dissatisfied with the will of Martin Neipp, made in November 1939, he filed the present complaint in chancery asking that this will be declared null and void and that the assets of Martin Neipp's estate be distributed in accordance with the prior will, executed April 21, 1927.

The cause was referred to a master in chancery who, after hearing evidence, reported, recommending that the prayer of the complaint be allowed. Objections to this report were filed by defendants Rose Neipp Plocueani, Carrie Neipp Erikson and Louise Neipp, nieces of Martin Neipp, which were overruled by the chancellor, and a decree was accordingly entered, declaring the last will of Martin Neipp, executed November 2, 1939, to be null and void, and from this decree these nieces, defendants, appeal.

Plaintiff's theory is that Martin and Mary Neipp executed their wills of April 21, 1927, pursuant to an agreement to draw irrevocable wills, and that when she died first, Martin was estopped from executing another will by reason of this agreement.

Defendants argue that the findings of the master and of the chancellor are against the weight of the evidence; that the wills of Martin and Mary Neipp, executed April 21, 1927, were not executed as a result of any agreement that they should be irrevocable; that each of the wills gives an absolute fee to the survivor, with no limitations of any nature.

Martin Neipp's first will gives his entire estate to his wife Mary if she survives him; in the event she does not survive him it gives the entire estate to a trustee, to be held for the benefit of plaintiff, the adopted son, and to be paid to him when he attains the age of 30; in the event that the adopted son does not survive Martin Neipp the entire estate shall be divided among the five children of the testator's brother. The will of Mary Neipp, executed on the

same day, is identical in language with the will of her husband, with the exception that he is named as the first taker in case of her death. These wills make no reference to each other, nor to any agreement, and place no limitations on the survivor.

The will of Martin Neipp of November 2, 1939, gave plaintiff a building valued at approximately $6,500, and to each of his two minor daughters $1,000 each, out of a personal estate of approximately $4,000. The balance of the personal estate was left to the three nieces of Martin, who are appealing.

To support the theory that the wills of April 1927, were executed pursuant to a contract that they should be irrevocable, the testimony of a number of witnesses was submitted. The principal witness was an attorney, Mr. Neumer, who testified that Martin and Mary Neipp came to his office in April 1927, and asked him to draw their wills; that he advised them that in as much as their entire estate, real and personal, was held jointly, it would not be necessary for them to draw a will at that time; that they told him they wanted wills drawn so that after both had died their property would go to plaintiff, and in case he died then everything should go to Mr. Neipp's brother's children, because Mrs. Neipp did not want her relatives to get any of the property; that he discussed with them the possibility of a later will by the survivor and told them that "the survivor would be in a position to sell and dispose of that property." To his suggestion that he should put a clause in the wills that one was the consideration for the other, they said "No." "Each one wanted their own will drawn without tacking in any clause in there."

The witness refreshed his recollection of the drawing of the wills from his penciled minutes. These were introduced into evidence and contained no reference to any agreement that the wills should be irrevocable or that they were based upon the consideration of each

other. There was evidence that Attorney Neumer, when questioned by Mr Dammann, guardian *ad litem* for the appealing defendants, and a lawyer, had stated that the Neipps would not stand for a clause in the will that one was a consideration for the other.

Other witnesses testified on behalf of the plaintiff as to conversations in 1926 or 1927 with Mrs. Neipp, who said that if she died everything would go to Mr. Neipp, and if both died the plaintiff would get the property, and in case he died Mr. Neipp's nieces would get it. These witnesses gave no definite testimony purporting to bear on the question of whether the Neipps contracted with each other not to change their wills.

Defendants contend that there was no evidence showing the Neipps intended that their wills of April 1927, should be irrevocable; that examining the wills and the testimony of the witnesses shows that these wills were merely individual, reciprocal wills, following similar plans of disposition of the property, as they had the same wishes with respect to this, and that they intentionally refrained from binding each other in any way about making subsequent changes in their wills.

69 Corpus Juris 1297, § 2715, defines reciprocal wills as instruments in which each testator devises and bequeathes his or her property to the other under a similar plan. Similar wills were considered in *Beveridge v. Bailey,* 53 S. D. 382. It was held that at their inception each testator left to the other the sole power of final disposition, saying there was no evidence of a desire on the part of either to control the final disposition of the survivor. And to the argument that the wills evidenced a disposition of the property effective after the death of the survivor, the opinion says: "We cannot establish a contract on a guess. If they wanted to bind each other to their respective wills as written, they should have indicated it in some appropriate manner." In *Klussman v. Wessling,* 238 Ill. 568, the

court had under consideration facts similar to those in the present case. There the husband and wife executed wills with similar provisions on the same day; the husband died first and the widow executed another will; it was contended that she had no right to revoke her first will. The court sustained her later will and dismissed the bill seeking to have it declared void. It was there argued, as here, that the wills amounted to a contract for a specific performance, according to their terms. The opinion (p. 572) says: ''Courts of equity look with jealousy upon the evidence offered in support of such a contract and will weigh such evidence in the most scrupulous manner. (*Sloniger v. Sloniger,* 161 Ill. 270.) Such contracts 'are only sustained when established by the clearest and strongest evidence.' (*Dicken v. McKinley,* 163 Ill. 318.)'' *Wilson v. Starbuck,* 116 W. Va. 554, 560, 561, involved facts similar to those in the instant case. There a man and his wife on the same day executed identical wills, leaving all real estate and personal property in fee simple each to the other; the wife died first; upon the subsequent death of the husband it was contended by his wife's heirs that his will was irrevocable and that they inherited through the devise to the wife; the heirs of the husband contended that the will was not irrevocable but merely reciprocal. It was held that the wills themselves were evidence of the fact that they were merely reciprocal, because in each will an absolute fee was given to the survivor without limitations; that the survivor was given ''the full, absolute, and unquestioned ownership of the property of the first to die.''

Cases cited by the plaintiff, while involving facts somewhat similar to those before us, are sufficiently different to distinguish them as supporting authorities. In *Frazier v. Patterson,* 243 Ill. 80, a joint will was executed by both husband and wife; the husband dying first, the wife took considerable property under his

will. It was held that the will itself showed conclusively it was made as the result of a contract that it should be irrevocable. Plaintiff cites *Curry v. Cotton*, 356 Ill. 538. This involved a joint will. It was held that such a will becomes irrevocable after the death of one of the makers if the survivor accepts any of the benefits made for him by such will. The opinion points out the difference between joint wills and wills made by separate instruments, their terms being reciprocal; that a will that is joint and reciprocal shows on its face by its reciprocal provisions that the bequests are made, one in consideration of the other. The opinion points out the distinction between mutual wills and joint wills and holds that in the case of mutual wills they are not generally of themselves sufficient evidence of a contract, and the proof of such a contract and the consideration to support it must be made *aliunde* the wills. Other cases cited by plaintiff may be likewise distinguished. We hold that the language of the instant wills indicates that they were merely reciprocal instruments and not irrevocable.

Referring to the testimony of witnesses of the plaintiff as to alleged conversations with Mr. or Mrs. Neipp, the statement made by this court in *Delee v. Leahy*, 278 Ill. App. 178, 181, should be borne in mind: "It has long been well settled that courts lend a very unwilling ear to statements of witnesses as to what dead people have said." This was followed in *Keshner v. Keshner*, 376 Ill. 354. And in 22 C. J. 291, it is said that testimony as to the oral statements of deceased persons is therefore regarded as the weakest kind of evidence and subjected to the closest scrutiny. The evidence fails to establish that the wills of April, 1927, were drawn pursuant to any contract that they should be irrevocable.

The trial court was in error in holding that the will of Martin Neipp, dated November 2, 1939, was void. Apparently this holding was upon the theory that he

was estopped from executing a new will after the death
of his wife, but as we have seen, as the wills of April
1927, were not irrevocable but merely reciprocal, Martin Neipp was free to dispose of his property by will
as he saw fit.

Counsel for the appealing defendants point out that
the net result of the chancellor's order is that Martin
Neipp was actually limited to a life estate under his
wife's will of April 21, 1927, although the wife's will
was never probated and could not operate on the
jointly held property to give Martin Neipp anything
he did not have prior to the execution of the will.
Evidently Martin Neipp and his wife had no such
thought in mind. They were told that the survivor
could sell or otherwise dispose of the property.

Defendants objected to the amount allowed for the
master's fees, on the ground the master failed to show
the time employed on the case. It was held in *Litwin
v. Litwin,* 375 Ill. 90, that the master, in claiming fees,
must show the time he necessarily employed in the
performance of his duties; that where a charge is made
in a lump sum without stating the amount of time consumed, the court will disallow such charges. Defendants appealing state that the master was allowed
$254.30, and that this was error.

For the reasons above stated the decree of the chancellor is reversed and the cause is remanded with
directions to dismiss plaintiff's complaint for want of
equity, and also to require the master to itemize his
claim for fees, in accordance with the rule stated in the
*Litwin* case.

*Reversed and remanded with directions.*
MATCHETT and O'CONNOR, JJ., concur.