**Larry Ray McGARY,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1080A272.**

Court of Appeals of Indiana,
First District.

June 17, 1981.

John M. Ross and J. Lynn Boese, Rees, Ross & Boese, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Fredrick N. Kopec, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Larry Ray McGary appeals his conviction, pursuant to trial by jury, of causing the death of another person by driving a motor vehicle while under the influence of intoxicating liquor.[1] He was sentenced to the Indiana Department of Correction for a term of one year. We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the State reveals that in the early morning hours of October 2, 1976, about 2:00 A.M., a collision between two vehicles occurred on Indiana State Road 9 approximately four miles north of Shelbyville. The vehicles involved were a Ford LTD automobile which was being driven north by Deborah Lightfoot and a Jeep which was registered in the name of McGary and had been traveling south on the highway. When neighbors and police officers arrived at the scene, Deborah Lightfoot was unconscious and seated in the driver's seat of her automobile. No one was in the Jeep, but McGary was lying in a ditch on the east side of the road about twenty-five feet south of the Jeep. The windshield from the Jeep was lying on the roadway between McGary and

---

1. Indiana Code 9-4-1-54(b)(1) in effect at the time of the offense provided in relevant part:

"(1) Any person who while under the influence of intoxicating liquor or unlawfully under the influence of narcotic or other habit-forming or dangerous, depressant or stimulant drugs operates or drives a vehicle and when so operating or driving causes the death of another person, is guilty of a felony and, upon conviction, shall be imprisoned for a determinate period of not less than one year nor more than five years; or shall be imprisoned for a determinate period of not less than one year nor more than two years to which shall be added a fine of not less than two hundred fifty dollars nor more than five thousand dollars. Upon conviction, the court shall recommend the suspension of the current driving license of the person so convicted for a period of one year and the commissioner of motor vehicles shall comply with the recommendations, and should the court fail to make the mandatory recommendation, or should the court fail to make the appropriate mandatory recommendation, the commissioner shall proceed to act in the matter as if such recommendation had been made by the court...."

the vehicle. When McGary was picked up to be placed in the ambulance, the horn button from the Jeep steering wheel was found between his arm and his body.

Both vehicles were badly damaged, primarily to the left front and front. Both Lightfoot and McGary were injured and were taken to the W.S. Major Hospital in Shelbyville. Lightfoot died en route to the hospital.

Officers, ambulance personnel, hospital staff members, and the emergency room physician all noticed a strong odor of alcohol on McGary's breath. A blood sample was taken from McGary at approximately 4:30 A.M. Testing of this blood sample at the Indiana State Police laboratory indicated a .166% blood alcohol content.[2]

McGary had been at the home of one McNierney earlier that night and had left there alone, driving the Jeep, about 10:30 P.M. on October 1st. He had consumed some beer at McNierney's and some earlier that day. McGary testified that he had no memory of the events after leaving McNierney's until sometime later when he was in the hospital.

## ISSUES [3]

1. Was McGary entitled to discharge under Ind.Rules of Procedure, Criminal Rule 4(C)?

2. Was the trial court's overruling of McGary's motion to suppress evidence of the blood alcohol test performed on the blood sample taken from him at the hospital reversible error?

3. Was the evidence sufficient to support the conviction?

**2.** A similar test performed in a blood sample taken from Lightfoot indicated no presence of alcohol in the blood.

**3.** We have renumbered and restated the issues in the interest of clarity and a more orderly presentation of the case.

**4.** Criminal Rule 4(C) provides:

"(C) Defendant discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against

## DISCUSSION AND DECISION

*Issue One*

McGary contends he was entitled to discharge under C.R. 4(C).[4] We do not agree.

McGary was indicted on October 26, 1976, and was arrested pursuant to a warrant on October 28, 1976. He appeared in court and was let to bail on the same day. On November 12, 1976, he entered a plea of not guilty and filed a motion for change of venue from the county which was set for hearing on December 1, 1976. Later, on November 22, 1976, McGary filed a motion for change of judge which was granted and a panel named pursuant to Ind.Rules of Procedure, Criminal Rule 13. Both of these motions constituted delays chargeable to McGary. *State ex rel. Garvin v. Dearborn C. C.,* (1972) 257 Ind. 631, 277 N.E.2d 370; *State ex rel. Walker v. Ratliff,* (1970) 253 Ind. 495, 255 N.E.2d 223. On December 1, 1976, the regular judge resumed jurisdiction because McGary had failed to strike from the panel and held a hearing on the motion for change of venue from the county. Ruling on the change of venue was taken under advisement. McGary orally moved for reconsideration of his motion for change of judge. At this point, the regular judge disqualified himself, a panel was named, and a special judge was selected. The special judge qualified and assumed jurisdiction on December 2, 1976. Thus, all the time from the filing of the motion for change of judge until the qualification of the special judge, a period of twenty (20) days, was a delay chargeable to McGary.

such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged."

On April 28, 1977, the court set a trial date of September 6, 1977. On August 24, 1977, McGary's counsel withdrew and new counsel appeared for McGary five (5) days later on August 29, 1977.[5] Also on August 29, 1977, McGary filed a motion to dismiss and a motion to suppress evidence. He filed a second motion to dismiss on September 2, 1977, and a second motion to suppress on September 23, 1977. The filing of these motions constituted delays chargeable to McGary. *Little v. State,* (1981) Ind., 415 N.E.2d 44; *Battle v. State,* (1981) Ind., 415 N.E.2d 39. The trial did not take place on September 6, 1977, because the special judge was involved in a trial in his own court and was unavailable. The court *sua sponte* made an entry to that effect. (*See, Harris v. State,* (1971) 256 Ind. 464, 269 N.E.2d 537.) Further, no hearing had yet been held on McGary's motions to dismiss and to suppress. An evidentiary hearing on the motion to suppress was held on September 23, 1977, and continued for further hearing on October 21, 1977. This hearing date was continued on motion of the State until November 17, 1977. On November 17, 1977, hearing on the motions was concluded and the case was set for trial on November 29, 1977. On November 22, 1977, the trial court granted the motion to suppress in part and denied the same in part, reserving further ruling until time of trial. As of the ruling of November 22, 1977, delay of eighty-one (81) days had been occasioned by the motions to dismiss and to suppress. Such delay is also chargeable to McGary. When his motion for discharge was filed on October 28, 1977, at least forty-five (45) days delay already had been caused by McGary's motions. Therefore, he was not entitled to discharge at that time. Nor was the November 29, 1977, trial date beyond the time limit of C.R. 4(C).

McGary made no objection to the November 29, 1977, trial date. Neither did he file any further motions for discharge. Instead, on November 25, 1977, he filed a motion for a continuance which was granted. On December 14, 1977, the court reset the trial for March 21, 1978. McGary did not object to this trial date. If he believed this date to be beyond the C.R. 4(C) time limit, it was his duty to object promptly to such date, or waive any question concerning C.R. 4(C). *Cherry v. State,* (1981) Ind., 414 N.E.2d 301; *Little v. State, supra.*

On January 20, 1978, the court denied McGary's motion to dismiss predicated upon absence of evidence of *corpus delicti,* and denied the motion to suppress evidence of the blood alcohol test. Then, on March 6, 1978, McGary filed a second motion for a continuance, and the March 21, 1978, trial date was thus continued at his behest. On March 15, 1978, the court reset the trial for September 5, 1978. On March 21, 1978, the trial court overruled McGary's C.R. 4(C) motion. McGary made no objection to the September 5, 1978, trial date. The trial proceeded on that date, resulting in a hung jury. The case was then reset for trial on June 6, 1979, resulting in the conviction appealed from. The June 6, 1979, trial date was not challenged by McGary. *See Baldwin v. State,* (1980) Ind., 411 N.E.2d 605.

Upon the record in this case, we hold that McGary was not entitled to discharge under C.R. 4(C).

*Issue Two*

 McGary next contends the trial court committed reversible error in denying his motion to suppress evidence of the taking of the blood sample from his body and the results of the blood alcohol test performed at the Indiana State Police laboratory. Although we believe this evidence was admissible under *Schultz v. State,* (1981) Ind.App., 417 N.E.2d 1127 (rehearing denied with opinion June 2, 1981) we need not decide that question, since no issue has been preserved for our review. McGary failed to object to testimony concerning the taking of the blood sample, the performance of the blood alcohol test, and the result

---

5. We do not believe the change in counsel constituted a delay chargeable to McGary. Change of counsel on the eve of a trial can be such a delay if delay in fact results. *Schuck v.* *State,* (1980) Ind.App., 412 N.E.2d 838, *trans. denied.* Here, it cannot be said that delay in fact resulted from the change of counsel.

of that test. The law is well established in Indiana that error in overruling a pretrial motion to suppress evidence is not preserved on appeal unless a proper objection is made when the evidence is offered in the trial. *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475; *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662; *Grimm v. State*, (1978) 268 Ind. 145, 374 N.E.2d 501; *Pointon v. State*, (1978) 267 Ind. 624, 372 N.E.2d 1159. *See also Waters v. State*, (1981) Ind., 415 N.E.2d 711 (applying the same rule to motion in limine). Since McGary did not object to the evidence concerning the blood test, he cannot complain of the denial of his motion to suppress.

*Issue Three*

McGary next contends the evidence is insufficient to sustain his conviction.[6] Specifically, he contends there is insufficient evidence to establish that he was the driver of the Jeep and that the death of Deborah Lightfoot was caused by his driving a motor vehicle while under the influence of intoxicating liquor.

When the issue of sufficiency of the evidence to support a conviction is raised on appeal, we will neither weigh the evidence nor determine the credibility of witnesses. Rather, we will consider only the evidence most favorable to the state, together with all reasonable inferences drawn therefrom, and if from that evidence and those inferences a reasonable trier of fact could find the existence of each element of the crime beyond a reasonable doubt, we will affirm the conviction. *Charlton v. State*, (1980) Ind., 408 N.E.2d 1248; *Allen v. State*, (1980) Ind.App., 406 N.E.2d 976. Further, where a conviction is based in whole or in part upon circumstantial evidence, we do not have to find that such circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence. We have to find only that an inference reasonably may be drawn from such evidence which supports the finding of the jury. *Parks v. State*, (1979) Ind., 389 N.E.2d 286.

Here, the evidence most favorable to the State established a collision between a Jeep registered to McGary and a Ford automobile driven by Lightfoot. There were gouge marks in the pavement in the northbound lane caused by the bottom of the vehicles striking the road surface; most of the debris from the accident was lying in the northbound lane; and both vehicles were damaged to the left front and front. Trooper Blaich of the Indiana State Police testified as to his training in accident reconstruction, and gave his opinion, without objection, that the point of impact was in the northbound (Lightfoot's) lane and that the Jeep had crossed over the center line and into that lane. The collision occurred about 2:00 A.M. McGary had left McNierney's home alone, driving the Jeep, about 10:30 P.M. McGary was lying in a ditch about twenty-five feet south of the Jeep. The windshield of the Jeep was lying between him and the Jeep. The horn button from the Jeep was found between his arm and body. A search of the area failed to disclose any other persons involved in the accident. McGary smelled strongly of alcohol. A blood alcohol test performed on blood taken two and one-half hours later indicated .166% blood alcohol. Expert testimony indicated a test taken at the time of the accident would have indicated .20% blood alcohol. A .166% test indicated driving impairment and .20% even greater impairment.[7] Lightfoot died en route to the hospital from injuries received in the collision.

Viewed from the vantage point imposed upon us, we believe this evidence is clearly sufficient to support a finding of each nec-

**6.** He couches this issue in terms of failure to prove *corpus delicti*. In essence he is challenging the sufficiency of the evidence to sustain his conviction.

**7.** By then applicable statute, evidence that there was ten hundredths percent (.10%), or more, by weight of alcohol in the blood constitutes *prima facie* evidence of being under the influence of intoxicating liquor sufficient to lessen driving ability. Indiana Code 9-4-1-56(2). For present law see Ind.Code 9-4-1-54(b)(4)(B).

essary element of the offense beyond a reasonable doubt. *Williams v. State*, (1981) Ind.App., 415 N.E.2d 118 (trans. pending); *Runyon v. State*, (1941) 219 Ind. 352, 38 N.E.2d 235. We believe the facts of this case are clearly distinguishable from *Floyd v. State*, (1980) Ind.App., 399 N.E.2d 449, where the defendant was found six blocks from the scene of the accident and responded that he owned a 1966 Rambler, but denied driving the automobile which in fact was registered to another. Although *Floyd* held the evidence insufficient, we believe the evidence here is much stronger and that the jury clearly could have found McGary to be the driver of the Jeep. Under *Williams* and *Runyon*, we believe the evidence here amply sustains the conviction.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.