**Norman HUGHES, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–385 A 76.**

Court of Appeals of Indiana,
First District.

July 30, 1985.

Woodrow S. Nasser, Terre Haute, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Norman Hughes (Hughes), perfected a belated appeal from a conviction by the Vermillion Circuit Court, without a jury, of driving while intoxicated under IND.CODE 9–4–1–54(b), a Class A misdemeanor.

We affirm.

### STATEMENT OF THE FACTS

Without any objection whatever, Indiana State Police Officer, Lynn Manley, testified that on May 16, 1982, he observed Hughes

operating an automobile northward on Indiana Highway 63 in Vermillion County at 87 miles-per-hour. Hughes was in the proper lane, was not weaving, and other than speeding, exhibited no aberrant driving characteristic. When he stopped Hughes for speeding, Officer Manley smelled alcohol on his breath. He administered a breathalyzer test which Hughes failed, registering .115 blood alcohol content. Hughes' speech was good and he was not argumentative. He was cooperative and satisfactorily performed the dexterity test consisting of the finger-nose test, the walking and the turning tests. The officer saw Hughes first at 8:05 p.m. and administered the breathalyzer test at 8:35 p.m. Officer Manley testified he was of the opinion that the alcohol affected Hughes' ability to drive. In rebuttal testimony Officer Manley addressed Hughes' assertion that he had only "two" cans of beer just before being stopped and "two" cans of beer much earlier at a friend's house. Without objection, Officer Manley stated it would take four beers in the blood system of a 150 pound man to cause a .10 reading and for a 170 or 180 pound man, Hughes size, it would take approximately six cans to cause a .10 reading. A person loses about one-half ounce of alcohol per hour.

## ISSUES

Hughes presents four issues for review, which we restate as follows:

I. Whether the trial court erred in refusing to strike Officer Manley's testimony concerning the absorption rate of beer.

II. Whether the court erred in finding Hughes guilty because the officer did not read the implied consent statute to him before administering the breathalyzer test.

III. Whether there was sufficient evidence to convict him.

IV. Whether the court committed fundamental error in admitting the breathalyzer test because the State failed to meet its burden in establishing a proper foundation.

We will address Issues I and II together.

Issues I and II: *Absorption Rate and Implied Consent.*

■ Officer Manley testified on rebuttal examination without objection. Defense counsel on cross-examination asked the officer the source of the information about the absorption rate of alcohol, which the officer replied was text books. The court denied Hughes' motion requesting that all of Manley's rebuttal testimony be stricken from the record. The basis of the motion at trial was hearsay, but here Hughes argues that Manley was not qualified as an expert. Hughes also argues that the trial court erred in finding him guilty because the officer did not advise him of the implied consent law before administering the breathalyzer test.

These issues are waived by Hughes' failure to make a timely objection, and by his pursuit of a different objection on appeal than was made at trial. *Jones v. State,* (1981) Ind. 425 N.E.2d 128; *McGary v. State,* (1981) Ind.App., 421 N.E.2d 747.

Issue III: *Sufficiency of the Evidence.*

Hughes argues that because he was not driving erratically, except for his speed, that he passed the dexterity test, was cooperative and not belligerent, that the evidence of the .115 reading on the breathalyzer is insufficient to convict him of driving while intoxicated. The breathalyzer, he contends, is not conclusive, but only corroborative evidence of one's intoxication.

IND.CODE 9–4–1–54(b)(4)(A), which was in force at the time of this incident, provides:

"Evidence that there was ten hundredths percent (.10%), or more, by weight of alcohol in his blood constitutes prima facie evidence that he was intoxicated."

According to Black's Law Dictionary, 1353–1354; (4th Ed.1951) prima facie evidence is:

"Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts

constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient."

Black's definition was quoted with approval in *Ellet v. Ellet,* (1965) 137 Ind.App. 96, 205 N.E.2d 555. *Hinds v. McNair,* (1955) 235 Ind. 34, 129 N.E.2d 553, addressing this issue said:

"[A]ssuming appellants made out a prima facie case, it is overcome as soon as opposing evidence is produced to explain or rebut it *to the satisfaction of the triers of the fact."* (Emphasis added).

235 Ind. at 54, 129 N.E.2d 553. *See also Hitt v. Carr,* (1921) 77 Ind.App. 488, 130 N.E. 1.

What evidence is sufficient to explain or refute the prima facie case is addressed to the decision of the trier. *Sebasty v. Perschke,* (1980) Ind.App., 404 N.E.2d 1200. In that case there was evidence that a letter had been properly addressed, stamped, and delivered to the post office. Such, the court said, was prima facie proof that the letter was received by the addressee. However, such presumption is not conclusive.

"While the presumption of the receipt is not conclusive, neither is the statement by an interested party of non-receipt. It is then for the trier of fact to determine from all of the evidence and reasonable inference to be drawn therefrom what occurred. (Citation omitted). The court, sitting as trier of fact, concluded after hearing all the evidence in the case that the letter was received by Sebasty. We cannot say that the evidence leads solely to the opposite conclusion."

404 N.E.2d at 1202. *See also City of Hammond v. Red Top Trucking Co., Inc.,* (1980) Ind.App., 409 N.E.2d 655.

■ We conclude that in Indiana the rule is that where a prima facie case has been established, and contradictory or rebutting evidence is then presented, the prima facie case does not disappear, but remains in the case. Whether such rebutting evidence is sufficient to overcome the prima facie case is for the trier to determine from all of the evidence. *See New York, Chicago and St.*

*Louis Raidroad Company v. Henderson,* (1958) 237 Ind. 456, 147 N.E.2d 237 (Res Ipsa Loquitur).

Examination of Hughes' authorities, *Boothe v. State,* (1982) Ind.App. 439 N.E.2d 708; *New v. State,* (1970) 254 Ind. 307, 259 N.E.2d 696; *Railway Express Agency, Inc. v. Bonnell,* (1941) 218 Ind. 607, 33 N.E.2d 980, reveal that they are not on point and add nothing to his argument. Hughes cites IND.CODE 9–11–4–3, which defines "relevant evidence" to include a test of .10 or more. This section was enacted after May 16, 1982, and was not in force at the time of this offense. In any event it is not applicable to this problem.

■ As shown above, Hughes was traveling 87 miles-per-hour at dusk, with a breathalyzer reading of .115, and Officer Manley was of the opinion that his blood alcohol content affected his driving. A prima facie case was established. Whether the fact that Hughes passed the dexterity test rebutted the prima facie case was for the determination of the trier of fact. The trier could well have inferred that Hughes' aberrant driving behavior of traveling 87 miles-per-hour; 32 miles-per-hour over the speed limit, at dusk, reflected impaired judgment and ability. We do not weigh the evidence or determine the credibility of the witnesses. Rather we consider only the evidence favorable to the State, together with all reasonable inferences following therefrom. *McGary, supra.* We find the evidence sufficient to support the judgment. *Gray v. State,* (1983) Ind.App., 450 N.E.2d 125 sustains a conviction upon a breathalyzer reading over .10 after a defendant had been stopped for a traffic infraction.

Issue IV. *Fundamental Error.*

■ Hughes, though presenting no reviewable argument regarding the admission of the breathalyzer test because such challenge was not included in his motion to correct errors, argues here that the court committed fundamental error in permitting the results of the breathalyzer to be admit-

ted without requiring the State to prove a proper foundation. Failure to object to the admission of blood test results waives any error. *McGary, supra.* Failure to object to identification evidence similarly waives error. *Taylor v. State,* (1984) Ind. 469 N.E.2d 735; *Hunt v. State,* (1983) Ind. 455 N.E.2d 307. Hughes cites no authority stating the fundamental error doctrine is applicable to this situation and we have found none. The fundamental error doctrine is applicable only where the proceedings, viewed as a whole, deprive a defendant of a fair trial. However, a defendant may not sit idly by while error is committed and later take advantage of it, where a proper objection made at trial could have corrected the error. *Grimes v. State,* (1976) 170 Ind.App. 525, 353 N.E.2d 500. Breathalyzer tests are clearly admissible. Had objection been made to the lack of a proper foundation in this case, such foundation could then have been supplied. Hughes has waived any error by his failure to object, or to address such issue in his motion to correct errors.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.