**Frank D. BOYD, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 82A01–8708–CR–209.**

Court of Appeals of Indiana,
First District.

Feb. 16, 1988.

of alcohol, his eyes were bloodshot, and he was very talkative. Boyd's speech was not slurred and no field sobriety tests were administered. Because Boyd was incapable of giving a sufficient breath sample for an alcohol test, he was taken to Welborn Hospital at 4:38 P.M. where a blood test administered there revealed a .14% blood alcohol content. Boyd exhibited no problems with his driving other than the speeding violation.

John D. Clouse, Michael C. Keating, Laurie A. Baiden Bumb, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Frank D. Boyd appeals his conviction by court trial of operating a motor vehicle while intoxicated, a class A misdemeanor [1] for which he was fined $500 and received a 180 day suspended sentence. We affirm.

## FACTS

On November 1, 1986, about 4:00 P.M., Boyd was driving a pickup truck south on First Avenue in Evansville. He stopped for a stop light at the intersection of Mill Road. Indiana State Police Officer Humphrey was stopped in the lane next to Boyd. When the light changed, the pickup truck took off at a high rate of speed. Trooper Humphrey followed for a distance of one-half mile, clocking the pickup truck by radar. The truck attained a speed of 54 miles per hour in a 30 mile per hour zone, and Humphrey stopped the truck. Boyd, the operator of the truck, smelled strongly

## ISSUE

The sole issue presented for our decision is whether the evidence was sufficient to sustain the conviction.

## DISCUSSION AND DECISION

Boyd challenges the sufficiency of the evidence to sustain his conviction contending there was no evidence of impaired condition on his part.[2] He relies upon *Warner v. State* (1986), Ind.App., 497 N.E.2d 259, and *Sering v. State* (1986), Ind.App., 488 N.E.2d 369.

In *Warner*, police followed the defendant's pickup truck for seventeen blocks and observed no improper driving. The truck was stopped because of a complaint that the driver had attempted to pick up two young women. An odor of alcohol on Warner's breath was detected by the officer and Warner's eyes were bloodshot. Although Warner successfully performed a finger to nose dexterity test, a breath test revealed a blood alcohol content of .23 percent. The Second District of this court reversed the conviction on the ground there was no evidence of any impaired condition. The *Warner* court contended the provision in Indiana Code section 9–11–1–7 that a blood alcohol content of .10% or more is prima facie evidence of intoxication [3] with-

---

1. Indiana Code section 9–11–2–2 which provides: "A person who operates a vehicle while intoxicated commits a class A misdemeanor."

2. Indiana Code section 9–11–1–5 provides in relevant part that intoxicated means under the influence of alcohol such that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to such an extent as to endanger any person.

3. Indiana Code section 9–11–1–7 provides: "'Prima facie evidence of intoxication' includes evidence that at the time of the alleged violation there was ten hundredths percent (.10%), or more, by weight of alcohol in the person's blood."

out proof of impaired driving ability was an insufficient basis upon which to base a conviction for operating a motor vehicle while intoxicated.[4] The holding in *Warner* was based in part on the decision in *Sering* where the court held that the offense of operating a motor vehicle with a blood alcohol content of .10% or more (Ind. Code § 9–11–2–1) was not the same offense as operating a motor vehicle while intoxicated (Ind. Code § 9–11–2–2) because the latter involved the additional element of "impaired condition of thought and action and the loss of normal control of a person's faculties to such an extent as to endanger any person." Ind. Code § 9–11–1–5. In *Sering*, however, the conviction of operating a motor vehicle while intoxicated was upheld because of the ample evidence of Sering's obviously impaired condition.

However, we do not believe Boyd is entitled to reversal on the basis of either *Sering* or *Warner*. Rather, we believe the conviction should be affirmed on the basis of our decisions in *Collins v. State* (1986), Ind.App., 491 N.E.2d 1020, and *Hughes v. State* (1985), Ind.App., 481 N.E.2d 135. In *Collins*, the defendant was stopped because there were no rear lights in operation on his truck. Collins emitted a strong odor of alcohol, his eyes were bloodshot, his speech was slurred, he was extremely talkative, he failed certain dexterity tests, and a breathalyzer test revealed a blood alcohol content of .12%. We held the evidence sufficient.

In *Hughes*, the defendant was driving in the proper lane, was not weaving, and other than speeding, exhibited no aberrant driving. When Hughes was stopped for speeding, the officer smelled alcohol on Hughes's breath. Hughes had no speech problem and satisfactorily performed dexterity tests. We affirmed the conviction rejecting Hughes's contention that because he was not driving erratically, except for his speed, and passed field sobriety tests, the .115% blood alcohol reading on the breathalyzer was not a sufficient basis upon which to convict him. We cited the statutory presumption of intoxication, then Ind. Code § 9–4–1–54(b)(4)(A), and stated that "Hughes' aberrant driving behavior of traveling 87 miles-per-hour, 32 miles-per-hour over the speed limit, at dusk, reflected impaired judgment in ability." *Hughes*, at 137.

■ Here, Boyd was driving 54 miles-per-hour, at night, in a 30 mile-per-hour zone. We are of the opinion that as in *Hughes* this fact alone demonstrates impaired judgment and ability of such a nature as to endanger others.[5] Thus, all the elements of driving while intoxicated as proscribed by Ind. Code § 9–11–2–2 were established.

■ Further, we are of the opinion, and hold that whenever any driver of a motor vehicle has committed a traffic violation and the driver exhibits evidence of intoxication and has a blood alcohol content of .10% or more, such evidence will sustain

---

**4.** The *Warner* decision was criticized by the majority in *Clark v. State* (1987), Ind.App., 512 N.E.2d 223, 228. We also disagree with the holding in *Warner*.

**5.** In *Elsperman v. Plump* (1983), Ind.App., 446 N.E.2d 1027, 1030, we referred to *Lopez v. Maez* (1982), 98 N.M. 625, 632, 651 P.2d 1269, 1276, which cited statistics from the National Safety Council that approximately half of all auto fatalities are the result of drunk driving; that more Americans are killed each year as a result of drunk driving than from any other accident; and that in 1980, approximately 26,300 persons were killed in this country in drunk driving accidents. U.S. Federal Highway Administration statistics reported in U.S. Bureau of the Census, *Statistical Abstract of the United States: 1987* (107th edition), Washington, D.C. (1986),

reveal 19,174 highway deaths involving drinking drivers in 1985, approximately one-third of all fatal motor vehicle accidents. While these later figures show a reduction from 1980 levels, due in part, no doubt, to vigorous prosecution of drunk driving cases, still far too many Americans are meeting their demise at the hands of intoxicated drivers.

In view of the well-documented carnage on our highways resulting from drunk drivers, an officer stopping a driver for a traffic violation and observing signs of intoxication on that driver should not have to wait until that driver crosses over the center-line, collides head-on with another vehicle, and adds the name of another unfortunate and innocent victim to the tragic statistics.

a conviction for operating a motor vehicle while intoxicated.

Judgment affirmed.

ROBERTSON and STATON, JJ., concur.