**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 22 2014, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DESMOND E. LEWIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A05-1306-CR-284 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITLEY SUPERIOR COURT
The Honorable Douglas M. Fahl, Judge
Cause No. 92D01-1106-CM-290

**April 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a jury trial, Desmond E. Lewis was convicted of operating a vehicle while intoxicated in a manner that endangers a person ("OWI"),[1] a Class A misdemeanor.[2] Additionally, Lewis was found to have committed two Class C infractions: (1) exceeding a 60 mph speed limit;[3] and (2) unsafe lane movement without a signal.[4] On appeal, Lewis raises the following two issues:

I.      Whether Lewis was denied his Sixth Amendment right to confrontation when the trial court admitted a DataMaster certificate that was created about sixteen days after the DataMaster was used to calculate Lewis's blood-alcohol content ("BAC");[5] and

II.     Whether there was sufficient evidence to sustain Lewis's conviction for OWI.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 5, 2011, around 9:30 a.m., Indiana State Trooper Todd Reed was driving westbound on U.S. 30, near County Road 600 East, in Whitley County when he observed a vehicle traveling eastbound at a high rate of speed. The driver of the vehicle was later

---

[1] *See* Ind. Code § 9-30-5-2.

[2] Lewis was also convicted for operating a vehicle with an alcohol concentration equivalent to at least .08 of a gram of alcohol per two-hundred-ten liters of his breath as a Class C misdemeanor. *See* Ind. Code § 9-30-5-1. However, prior to sentencing, that conviction was merged with his Class A misdemeanor OWI conviction.

[3] *See* Ind. Code § 9-21-5-2 (offense); Ind. Code § 9-21-5-13 (penalty).

[4] *See* Ind. Code § 9-21-8-24 (offense); Ind. Code § 9-21-8-49 (penalty).

[5] As our court noted in *Ramirez v. State*, "The DataMaster measures the concentration of alcohol in a suspect's breath. A subject blows into the machine, and the DataMaster prints an evidence ticket displaying the subject's BAC." 928 N.E.2d 214, 215 (Ind. Ct. App. 2010), *trans. denied*.

identified as Lewis. After Trooper Reed activated his radar and determined that Lewis's vehicle was traveling at 78 mph in a zone designated for 60 mph, Trooper Reed turned around and headed east on U.S. 30. Once behind Lewis, Trooper Reed clocked the vehicle going 75 mph and saw Lewis change lanes without signaling. Trooper Reed initiated a traffic stop, and Lewis pulled his vehicle to the side of the road.

Upon reaching the vehicle, Trooper Reed noticed an odor of alcohol on Lewis's breath. Lewis, who was respectful and cooperative, correctly performed a divided attention test. Thereafter, Trooper Reed transported Lewis to the Whitley County Sheriff's Department for field sobriety testing. On the way to the Sheriff's Department, Lewis stated that he had stopped drinking alcohol around 2:00 a.m., *i.e.*, about seven-and-a-half hours earlier. Lewis was given, and passed, two field sobriety tests—the walk and turn test and the one-leg stand test. Trooper Reed then administered a breath test using a DataMaster. Lewis's DataMaster printout showed that he had a BAC of .08 of a gram of alcohol per 210 liters of breath.

Lewis was charged with OWI as a Class A misdemeanor, and with operating a vehicle with an alcohol concentration equivalent to at least .08 of a gram of alcohol but less than .15 of a gram per 210 liters of the person's breath, a Class C misdemeanor. Lewis was also served with a complaint and summons for having committed the Class C infractions of speeding and unsafe lane movement.

Prior to trial, the State filed a motion in limine to prevent the defendant from admitting at trial 1) any reference to the State being required to introduce expert testimony and 2) any impermissible vouching testimony regarding the veracity of any defense

3

witness. *Appellant's App.* at 121. Following a hearing on the motion, the trial court granted the State's motion.

Trooper Reed is a certified breath test operator. During the jury trial, evidence of Trooper Reed's certification to perform the tests was admitted without objection. *Tr.* at 164; *State's Ex.* 1. The State also offered, and the trial court admitted without objection, two certificates of inspection and compliance for the DataMaster used in Lewis's chemical breath test. *Tr.* at 165-66. The first certificate reflected a routine inspection of the DataMaster performed on March 16, 2011 ("the First Certificate"), a date less than ninety days before Lewis was tested. *State's Ex.* 2. The second certificate reflected an inspection of the DataMaster performed on June 21, 2011 ("the Second Certificate"), a date about sixteen days after Lewis was tested. *State's Ex.* 3. Again without objection, the State admitted a one-page description of the approved method for administering a breath test by means of a DataMaster, *State's Ex.* 4, as well as the DataMaster Evidence Ticket reflecting that Lewis had a BAC of .08, *State's Ex.* 5. *Tr.* at 167-68.

A recording of Trooper Reed administering the sobriety tests to Lewis, including the DataMaster breath test, was admitted at trial. *Id.* at 178-82. The tape showed Trooper Reed instructing Lewis to blow into the DataMaster for nine to eleven seconds. *Id.* at 181. The State asked Trooper Reed if he knew that the tape actually showed that Lewis blew into the DataMaster for approximately twenty-four seconds. *Id.* at 174. After watching the video at trial, Trooper Reed testified that he thought that Lewis had blown into the DataMaster for no more than twenty seconds. *Id.* at 182.

4

Dr. Alfred Staubus, an expert in the pharmacology and toxicology of alcohol, testified on Lewis's behalf. Dr. Staubus testified that the State of Indiana does not take into consideration "the biological variability for borderline tests." *Id.* at 203. He opined that the length of the submission of a breath sample and the individual biological makeup of the defendant, including the temperature of an individual, can cause the result of the test to lack reliability or accuracy. *Id.* at 195, 200-01. In Dr. Staubus's opinion, the DataMaster breath test results should not be relied upon because Indiana does not require that a "concurrent calibration check" be performed each time a breath test is offered; therefore, a single breath test from a DataMaster "may or may not be accurate or reliable." *Id.* at 210-12.

A jury found Lewis guilty as charged. During sentencing, the trial court merged Lewis's Class C misdemeanor conviction into his OWI conviction, and entered judgment of conviction on the Class A misdemeanor OWI. The trial court sentenced Lewis to a one-year suspended sentence for the Class A misdemeanor and imposed fines for the infractions of speeding and unsafe lane change. Lewis now appeals.

## DISCUSSION AND DECISION

### I. Confrontation Clause

Lewis asserts that the trial court erred by admitting the Second Certificate. Lewis concedes that the First Certificate "was admitted into evidence as a foundational requirement for the admission of the [DataMaster's] certified test result. *Appellant's Br.* at 10 (citing *Tr.* at 166). A certified copy of this certificate constitutes prima facie evidence that the DataMaster:

5

(A) was inspected and approved by the state department of toxicology on the date specified on the certificate copy; and

(B) was in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test.

Ind. Code § 9-30-6-5(c). Our court has said that the admission of such a certificate "is a safeguard the legislature put in place for the benefit of the defendant." *Jones v. State,* 982 N.E.2d 417, 428 (Ind. Ct. App. 2013) *trans. denied.*

Lewis objects to the admission of the Second Certificate, contending that it was testimonial in nature and constituted misleading and incomplete testimony without the possibility of confrontation. Lewis maintains that, because the Second Certificate was created after his breath test, it was improper to use it during closing argument to bolster the accuracy of the DataMaster. Lewis argues that, as a result of the Second Certificate being admitted, he "was denied his Sixth Amendment right to confront the individuals who inspected the machine to determine what adjustments, calibration[,] or repairs they were required to make ten days after the Defendant was administered his test." *Appellant's Br*. at 8. He also argues that the Second Certificate was "utilized not as a safe guard [sic] required by the legislature but as a means to vouch for the original testing of the machine." *Id.*

Lewis notes that he did not understand the testimonial nature of the Second Certificate until the State made the following rebuttal argument in closing:

Now, compare and contrast as I asked you initially with the two certifications that were performed on this machine by the Indiana University Department of Pharmacology and Toxicology. On March the 16th, 2011, this instrument is in good operating condition, satisfying the accuracy requirements set out

6

by the State Department of Toxicology Regulations. Okay? That's approximately a little less than ninety days before the stop of the Defendant. And, according to Dr. Staubus, we gotta do that once every hundred and eighty days. We sure do. You know what? We did. We did it again. We did it ten days after Desmond Lewis was arrested. And, you know what it says? The instrument is in good operating condition, satisfying accuracy requirements set out by the State Department of Toxicology Regulations.

*Id*. at 271-72. Lewis contends that this argument acted to bolster the accuracy of the DataMaster results, yet denied him the right to confront the inspectors who tested the DataMaster, and maybe even fixed or recalibrated the machine.

A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010); *see Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal."). "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." *Brown*, 929 N.E.2d at 207. Here, Lewis did not object when the Second Certificate was introduced, in fact, he affirmatively stated that he had no objection to its admission. *Tr*. at 166.

As our Supreme Court recently stated in *Brown*:

A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

*Brown*, 929 N.E.2d at 204 (citations omitted) (internal quotation marks omitted).

Lewis's argument regarding fundamental error is as follows:

The jury was free to refuse the conclusion of the Defendant's expert, however, by being informed that the instrument was tested 10 days after the Defendant was administered the certified test and then to be informed that the instrument was still in good working order and that the State exceeded their statutory duty, is misleading and misconstruing the real purpose of the second test [sic]. In a case which is not close, such action may have no [e]ffect, however, in a case of this nature [where the BAC is .08], the finding of guilty may well have turned on such misinformation.

*Appellant's Br.* at 16.

Assuming without deciding that the use of the Second Certificate during closing argument was error, it was not fundamental error. The evidence of the two certificates was relevant to whether the DataMaster was in good working condition when it was used. Lewis's defense focused not on the condition of the particular DataMaster utilized in this case, but instead, on the validity and reliability of a borderline BAC from any Indiana DataMaster. Dr. Staubus testified that the breath test results were suspect not because of any perceived malfunction of the DataMaster but because: (1) Indiana does not take into consideration the biological variability for borderline tests when, as happened here, the subject blows into the DataMaster for twenty-four seconds instead of six seconds, *tr.* at 200; (2) Indiana does not require that a "concurrent calibration" check be performed each time a breath test is offered, *id.* at 207-12; and (3) Indiana does not require that an individual submit two breath tests, *id.* at 212.

The jury heard that Lewis was stopped because he was speeding and made an unsafe lane change, that he had an odor of alcohol on his breath, and that he admitted he had been drinking but that he stopped more than seven hours earlier. *Tr.* at 158, 160, 162. The jury

8

also heard that Lewis was respectful and cooperative with Trooper Reed, that he passed a sobriety test at the scene, and that he passed two additional sobriety tests after he was taken to the Sheriff's Department. *Id*. at 160, 161-62. Instruction Number 13 advised the jurors that a BAC of .08 is prima facie evidence of intoxication, but that that evidence can be rebutted. *Id*. at 277. The jury was also instructed that "you may reject such evidence [of the BAC] even if it is not rebutted." *Id*. Dr. Staubus testified regarding the errors that can arise in Indiana through the testing protocol, especially in a borderline BAC.

At most, the Second Certificate could only have bolstered the State's contention that the DataMaster used on Lewis was in proper working condition. The Second Certificate did not offer any evidence regarding whether the State's DataMaster protocol is adequate to protect a defendant who has a borderline BAC. The Second Certificate also did not contradict any of Dr. Staubus's expert opinions. Lewis received a fair trial. The admission of the Second Certificate did not constitute fundamental error.

## II. Sufficiency of Evidence for OWI

Lewis argues that the State failed to present sufficient evidence to support his OWI. When reviewing a claim of insufficient evidence, "an appellate court considers only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then the verdict will be upheld." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (citations omitted) (internal quotation marks omitted). An appellate court does not reweigh the evidence or judge the credibility of witnesses. *Id*. (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)). "These

9

evaluations are for the trier of fact, not appellate courts." *Id*. In essence, a reviewing court assesses only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented. *Id*. (citing *Kidd v. State*, 530 N.E.2d 287, 287 (Ind. 1988)).

In order to convict Lewis of OWI as charged here, the State had to prove that he (1) operated a vehicle, (2) while intoxicated, and (3) in a manner that endangered a person. *See* I.C. § 9-30-5-2(b). The fact that Lewis was operating the vehicle is not in question; rather his challenge to the conviction is that the State failed to show both that he was intoxicated and that he endangered a person.

### A.    *Element of Intoxication*

Trooper Reed testified at trial that he noted an odor of alcohol on Lewis's breath when he stopped him and that Lewis admitted he had been drinking earlier that morning but had stopped around 2:00 a.m. *Tr*. at 159-60. As further evidence of intoxication, the State introduced a DataMaster Evidence Ticket ("Evidence Ticket"). *State's Ex*. 5. The Evidence Ticket, which was created by Trooper Reed on the morning of the stop, reflected that Lewis had a .08 BAC. At the close of trial, the trial court read to the jury Final Instruction No. 13; Lewis did not object. That instruction set forth:

> Prima facie means that quantity and quality of evidence necessary to prove a fact. Prima facie evidence creates an inference that the Defendant was sufficiently under the influence of intoxicating liquor to lessen his driving ability within the meaning of the law. This inference is not conclusive, however, and may be rebutted by other evidence. Also, you may reject such evidence even if it is not rebutted. Prima facie evidence of intoxication includes evidence that, at the time of the alleged violation, there was at least eight-hundredths percent of alcohol by weight in grams in either 1) one hundred milliliters of a person's blood; or 2) two [hundred] and ten liters of

10

a person's breath. Prima facie evidence means evidence which, if . . . uncontradicted or unchallenged may stand alone as sufficient to prove a fact.

*Tr*. at 277-78.

Dr. Staubus testified as an expert witness for Lewis. His testimony was aimed at challenging the validity of the reported .08 BAC on the Evidence Ticket and undermining the jury's confidence in the prima facie evidence of intoxication. The jury's verdict that Lewis was guilty of OWI revealed that the jury's confidence in the BAC result was not undermined. The Evidence Ticket, reflecting the .08 BAC, was sufficient to support the jury's finding that Lewis was intoxicated.

Lewis seems to argue that there was insufficient evidence on the element of intoxication because Trooper Reed failed to follow the DataMaster protocol. *Appellant's Br*. at 16-17. Citing to State's Exhibit 4—a form that sets forth the six-step "approved method" for administering the DataMaster breath test—Lewis contends that Trooper Reed placed a check mark only next to the first five steps, but did not check off the sixth step. *State's Ex*. 4. The sixth step instructed: "When the printer stops, remove the evidence ticket or report sheet from the printer and check the report printed on the evidence ticket or report sheet for the numerical ethanol subject sample and correct date and time." *State's Ex*. 4. Lewis maintains that Trooper Reed's failure to place a check mark next to the sixth step means that a key element of the protocol was not followed, and therefore, there was insufficient evidence that Lewis had a BAC of .08.

As support for his position, Lewis cites to *United States v. Meadows*, 91 F.3d 851 (7th Cir. 1996) and *Bishop v. State*, 638 N.E.2d 1278 (Ind. Ct. App. 1994)—both cases

where a defendant's conviction was overturned after finding insufficient evidence to sustain the convictions. Those cases, however, are distinguishable from the present case.

In *Meadows*, the Seventh Circuit reversed both of the defendant's firearm-related convictions after finding that there was insufficient evidence to prove that Meadows's weapon contained a "rifled bore," which was an *element* of the offense. *Meadows*, 91 F.3d at 853. In *Bishop*, our court reversed the defendant's conviction for "operating a vehicle while his driving privileges were suspended for being an habitual traffic offender." As an element of the offense, the State had to prove that "defendant knew his driving privileges had been suspended as a result of having been determined to be an habitual traffic offender." *Bishop*, 638 N.E.2d at 1279. "Proof of mailing the notice [was] an evidentiary prerequisite to proving that a suspension for being an habitual traffic law violator [was] valid. *Id*. at 1280. "It logically follow[ed] that proof of the content of the notice mailed [was] an evidentiary prerequisite to a valid suspension." *Id*. Because the "evidentiary prerequisite" did not appear in the record, we reversed Bishop's conviction on the basis that the "State ha[d] failed to establish the element of a valid suspension." *Id*. Here, the State did not have to prove as an element of the offense that Trooper Reed placed a check mark next to each step. Instead, the State merely had to prove that Trooper Reed followed the appropriate procedures when he arrived at Lewis's .08 BAC.

In response to the State's questioning, Trooper Reed testified that he followed protocol when he obtained Lewis's BAC.

> Q    As part of the testing protocol, Trooper . . . is there . . . an approved protocol for the, uh, administration of a breath test to, uh, an individual?

12

A      There is.

Q      And, what's that called?

A      It's called the approved method.

Q      And, when you . . . uh, when you're conducting an OWI investigation, an operating while intoxicated investigation, uh, is it your habit and practice to follow that protocol?

A      It is.

Q      In fact, you're required to follow that protocol. Are you not?

A      Absolutely.

Q      Okay. Did you follow that protocol in conjunction with Mr. Lewis's, uh, arrest?

A      I did.

Q      I'm [going to] hand you what I've marked as State's Exhibit 4 and ask you to identify that document, sir.

A      This is the Approved Method for Administration of a Breath Test Using a BAC DataMaster with a Keyboard. It has, um, my handwriting at the top designating Desmond E. Lewis and checkmarks to the left.

Q      Okay. And, is that the document you used to administer, uh, the steps used to go through to administer the . . . the test to Mr. Lewis?

A      It is.

*Tr.* at 166-67. At trial, Lewis did not claim that the BAC test results were placed into question because Trooper Reed failed to place a check mark next to step six. Additionally, on appeal, Lewis neither cites to nor can we find any authority that (1) requires a DataMaster operator to check each step, or (2) conditions the accuracy of the Evidence Ticket on whether the DataMaster operator checked each step. Notwithstanding the absence of a check mark, Trooper Reed testified that he followed the appropriate protocol. Lewis's request that we find insufficient evidence because the approved protocol was not followed is merely a request that we reweigh the evidence. This we cannot do.

### B.    *Element of Endangerment*

Lewis's second challenge to the sufficiency of the evidence is a claim that the State failed to prove endangerment. Specifically, Lewis avers that while he may have been

13

speeding and may have improperly changed lanes, this is insufficient to show endangerment. *Appellant's Br*. at 19. We disagree.

It is true that a showing of intoxication without more is inadequate to prove endangerment. *Vanderlinden v. State*, 918 N.E.2d 642, 645 (Ind. Ct. App. 2009), *trans. denied*. Contrary to Lewis's argument, however, the mere fact that he was driving eighteen miles over the speed limit was sufficient to prove the endangerment element. *Id*. at 646. The Court in *Vanderlinden* held:

> Although the only independent evidence of endangerment presented by the State was Vanderlinden's warning for speeding, that evidence is sufficient to support the conviction [for OWI]. For example, in *Boyd v. State,* 519 N.E.2d 182, 184 (Ind. Ct. App. 1988), we held that speeding "alone demonstrate[d] impaired judgment and ability of such a nature as to endanger others," despite a lack of external signs of intoxication such as slurred speech, lack of dexterity, or failed sobriety tests. *See also Hughes v. State,* 481 N.E.2d 135 (Ind. Ct. App. 1985) (observing that defendant was driving in proper lane, was not weaving, had no speech problems, satisfactorily performed dexterity tests, passed field sobriety tests, and other than speeding exhibited no aberrant driving). Thus, the excessive speed is evidence that Vanderlinden's manner of operating her vehicle could have endangered a person. Accordingly, Vanderlinden's excessive speed, regardless of the driving conditions or her proximity of others, is sufficient to establish endangerment of a person and support her conviction.

*Vanderlinden,* 918 N.E.2d at 646.

Lewis argues that the State's failure to place into evidence the condition of the road, the area surrounding that part of US 30 where the Defendant was driving, and the traffic conditions on that road at 9:30 a.m. make it impossible to determine if Lewis endangered anyone. *Appellant's App.* at 19. We disagree. In *Vanderlinden*, regardless of the driving conditions or her proximity to others, the defendant was found to have "endangered a person" by going sixteen miles over the speed limit. *Vanderlinden,* 918 N.E.2d at 646.

14

Like the court in *Vanderlinden*, we "decline to determine the precise extent of speeding, in the absence of other factors, necessary to show endangerment." *Id*. at 646 n.1. We do conclude, however, that evidence that Lewis drove eighteen miles over the posted speed limit was sufficient evidence of endangerment. Lewis's failure to signal before making a lane change also supported the endangerment element, as Lewis's failure in this regard could have endangered himself or another motorist. Finding sufficient evidence of the elements of intoxication and endangerment, we affirm Lewis's conviction.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.