## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 16 2018, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristi J. Line,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 16, 2018<br><br>Court of Appeals Case No.<br>32A01-1709-CR-2234<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Stephenie LeMay-Luken, Judge<br><br>Trial Court Cause No.<br>32D05-1702-CM-269 |

**Brown, Judge.**

[1] Kristi J. Line appeals her conviction for operating a vehicle while intoxicated as a class A misdemeanor. She raises one issue which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

*Facts and Procedural History*

[2] On February 19, 2017, Danville Police Sergeant Chase Wilson was training Officer Anthony Southern and they observed a vehicle go over "to the fog line and then went back into the lane" and turn south on County Road 300 East. Transcript Volume II at 7. After noticing the vehicle accelerate, Sergeant Wilson turned on his radar, which indicated that the vehicle was traveling at seventy miles per hour, and he confirmed that reading by pacing the vehicle. Sergeant Wilson activated the red and blue lights of his fully-marked police vehicle, and the vehicle driven by Line "started to go off to the side of the road she drove down into the ditch and then back up out of the ditch . . . and parked on the side of the road." *Id.* at 8.

[3] Sergeant Wilson approached Line's vehicle and observed that she had her window down two inches. Sergeant Wilson asked Line to lower her window, and Line was very argumentative and stated that she was afraid because she did not know that he was a police officer. Sergeant Wilson stepped out from behind the window to show her that he was in full uniform. At some point, Hendricks County Sheriff's Deputy Robert Lenover arrived at the scene. Line rolled the window down, and Sergeant Wilson asked her for her driver's license and registration. Line took more time to retrieve her driver's license and registration than one "normally would." *Id.* at 9. Sergeant Wilson could smell

an odor of alcohol emanating from the vehicle and asked Line to step out of the vehicle. Line was argumentative and said she did not want to step out of the car, but eventually agreed and stepped out of the vehicle.

[4] Sergeant Wilson asked standard questions before conducting field sobriety tests, and Line advised him that she had a back and neck injury and fibromyalgia which would prevent her from participating in some of the testing. Sergeant Wilson conducted a horizontal gaze nystagmus test, and Line "had six (6) out of six (6) possible indicators" on the test. *Id.* at 11. Sergeant Wilson advised her of Indiana complied consent, and Line stated she wanted to go back to her vehicle and sit until she was "ok to go." *Id.* Sergeant Wilson told her that she had to give him a yes or no answer, and Line was argumentative. Sergeant Wilson eventually placed Line in handcuffs with Deputy Lenover's assistance. Sergeant Wilson obtained a warrant for a blood draw, which was later performed at a hospital.[1]

[5] The State charged Line with operating a vehicle while intoxicated and resisting law enforcement as class A misdemeanors. On August 30, 2017, the court held a bench trial. When asked for the speed limit in the area where he stopped Line, Sergeant Wilson answered: "Either forty-five (45) or fifty (50), I can't remember exactly what it is on that portion of the county road. It's not seventy (70) miles an hour." *Id.* at 8. When asked on cross-examination about Line's

___

[1] The court admitted a toxicology report which indicated an analyte of ethanol and a result of "0.080 $\pm$ 0.004 g/100mL," State's Exhibit 1, as well as a toxicology report indicating a positive finding of "Dextro / Levo Methorphan," with a result of "18 $\pm$4 ng/mL." State's Exhibit 2.

vehicle leaving the lane of travel, Sergeant Wilson testified that the tires on Line's vehicle were on the fog line, but did not cross the fog line. Defense counsel asked Sergeant Wilson to tell her at what time Line "went left of center," and Sergeant Wilson answered: "As she traveled south on county road three hundred (300) east south of the airport. I can't give you a specific time as in hours and minutes." *Id.* at 15.

[6] After the State rested, the defense presented the testimony of Penny Horvath who testified that she was out with Line that day, that an officer followed her vehicle for awhile before moving behind Line's vehicle, and that she could not observe the officer's behavior with regard to Line's vehicle. On cross-examination, Horvath testified that she and Line were at the Alibi, a bar. When asked if she knew if Line was drinking, Horvath stated: "She had one (1) that I know of," and clarified that she was referring to beer. *Id.* at 26. On redirect examination, Horvath testified that she was with Line about three hours that evening and that Line had one beer and water.

[7] Line testified that she had one beer at the Alibi and that an officer followed her for five minutes, ran up to her bumper, and then backed off at least four or five times. She stated that she was very scared and sped up because she thought that someone was trying to run her off the road. She testified that she did not realize it was an officer "until the lights came on." *Id.* at 30. She testified that they "did a breathalyzer" and that Officer Wilson "had his breathalyzer, dropped it on the ground and it broke into three (3) or four (4) pieces." *Id.* at 33. She testified that she did not submit to a blood draw at first because she had

no idea what was going on.  On cross-examination, Line testified that, prior to her beer at the Alibi bar, she had a couple of sips of beer at Dare Devils in Speedway at 6:00 and "another half beer" around 8:00 or 8:30 at her nephew's house.  She also testified that she pulled her vehicle over without incident.

[8]  The court found Line not guilty of resisting law enforcement and guilty of operating a vehicle while intoxicated while endangering a person as a class A misdemeanor.  Specifically, the court held:

> [A]s to count one (1) I am going to find that the speed of the defendant was seventy (70) um we haven't had a firm testimony as to the speed limit, so even if you believe the speed limit was the top speed limit on that particular type of road which was potentially fifty (50) to fifty-five (55) she was still going over the speed limit with alcohol in her system.  Based on count one (1) so I find that is endangerment also her vehicle, officer, officer testified t[h]rough the Danville Police Department testified that she drove her vehicle kind of into the ditch and to back out and that is endangerment.  So, I'm going to find guilty to count one (1) as an a misdemeanor operating while intoxicated.

*Id.* at 42.  The court sentenced Line to 180 days at the Hendricks County Jail with 178 days suspended to probation.

## *Discussion*

[9]  The issue is whether the evidence is sufficient to sustain Line's conviction for operating a vehicle while intoxicated as a class A misdemeanor.  When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the

verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[10]     The offense of operating a vehicle while intoxicated is governed by Ind. Code § 9-30-5-2, which provides that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor," but "[a]n offense . . . is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person."

[11]     Line challenges only the element that she endangered a person. She argues that there is little more than proof of alcohol consumption being used to prove endangerment and this evidence is not sufficient. She asserts that an intoxicated driver does not endanger a person simply by violating any portion of the traffic code and that intoxication plus imperfect driving does not equal endangerment. The State argues that it presented sufficient evidence to show that Line endangered a person.

[12]     Mere intoxication is not sufficient to support a conviction of operating a vehicle while intoxicated as a class A misdemeanor. *Outlaw v. State*, 918 N.E.2d 379,

382 (Ind. Ct. App. 2009), *opinion adopted*, 929 N.E.2d 196 (Ind. 2010). "The element of endangerment can be established by evidence showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or the defendant." *Id.* at 381. "Endangerment does not require that a person other than the defendant be in the path of the defendant's vehicle or in the same area to obtain a conviction." *Id.*

[13] The record reveals that Line drove her vehicle over "to the fog line and then went back into the lane." Transcript Volume II at 7. Sergeant Wilson determined that Line was traveling seventy miles per hour in an area where the speed limit was either forty-five or fifty miles per hour. Defense counsel asked Sergeant Wilson to tell her at what time Line "went left of center," and Sergeant Wilson answered: "As she traveled south on county road three hundred (300) east south of the airport." *Id.* at 15. After activating his red and blue lights, Sergeant Wilson observed Line's vehicle start to go off to the side of the road and then "she drove down into the ditch and then back up out of the ditch . . . and parked on the side of the road." *Id.* at 8.

[14] Based upon the record, we cannot say that the inferences made by the fact finder were unreasonable. We conclude that evidence of probative value exists from which the trial court could have found Line guilty beyond a reasonable doubt of operating a vehicle while intoxicated as a class A misdemeanor. *See Staley v. State*, 895 N.E.2d 1245, 1251 (Ind. Ct. App. 2008) (observing that the defendant's intoxication resulted in unsafe driving practices and that the defendant was observed driving fifty-five miles per hour in a forty-mile-per-hour

zone and driving at night without his lights on, and concluding that the jury was presented with sufficient evidence of probative value that the defendant was endangering the public, the police, or himself), *trans. denied*; *Boyd v. State*, 519 N.E.2d 182, 184 (Ind. Ct. App. 1988) (observing that the defendant was driving fifty-four miles per hour at night in a thirty-mile-per-hour zone and that the defendant's speeding demonstrated impaired judgment and ability of such a nature as to endanger others).

## *Conclusion*

For the foregoing reasons, we affirm Line's conviction.

Affirmed.

Baker, J., concurs.

Riley, J., concurs in result with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristi J. Line,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>32A01-1709-CR-2234 |

**Riley, Judge, concurring in result.**

[17] While I ultimately concur in result, I write separately to address my concerns with the police officer's conduct. There is no dispute that Line, whose blood alcohol level registered 0.08, was traveling in excess of the speed limit, and this court has previously established that excessive speed is sufficient to establish the endangerment element of operating while intoxicated in a manner that endangers a person. *See Vanderlinden v. State*, 918 N.E.2d 642, 646 (Ind. Ct.

App. 2009), *trans. denied*. That said, I firmly believe that the actions of Sergeant Chase Wilson (Sergeant Wilson) directly contributed to the endangerment.

[18] Sergeant Wilson, who was training a new police officer, set his sights on patrons leaving the Alibi Bar. Line's friend, Penny Horvath (Horvath), left the bar at the same time as Line. As Horvath drove, she noticed that she was being followed by a Danville police car. The police officer "kept getting on [her] bumper and backing off," making Horvath "nervous." (Tr. Vol. II, pp. 24-25). After several minutes, the police officer "sped up and got in front of [Horvath]," to follow Line's vehicle as Line turned onto County Road 300 East. (Tr. Vol. II, p. 24).

[19] Sergeant Wilson testified that he began following Line after observing her vehicle "leave its lane of travel," but he subsequently clarified that Line's tires touched the fog line but did not cross it. (Tr. Vol. II, p. 6). As Line drove down the dark road, Sergeant Wilson, by his own testimony, "pac[ed]" her vehicle. (Tr. Vol. II, p. 7). Although Sergeant Wilson claimed he only began pacing to confirm the speed indicated by his radar, an inference can be made that he had been tailing Line's vehicle in the same way that he had paced Horvath's vehicle minutes earlier. In fact, Line similarly testified that the vehicle behind her repeatedly "was running up on [her] bumper and backing off" for several minutes. (Tr. Vol. II, p. 30). Unaware that she was being followed by a police vehicle, Line "thought that someone was trying to run [her] off the road and so [she] sped up to get away from them. And [she] really thought [she] was either going to die or be hurt or maybe even raped by this person that was running up

on [her] bumper." (Tr. Vol. II, p. 30). Sergeant Wilson engaged in this driving technique for "a good five (5) minutes" before he activated the lights on his vehicle and initiated the traffic stop. (Tr. Vol. II, p. 30).

[20] At that point, Sergeant Wilson stated that Line "drove down into the ditch and then back up out of the ditch um and parked on the side of the road." (Tr. Vol. II, p. 8). Mindful of the trial court's discretion as to finding credibility in Sergeant Wilson's claim that Line somehow drove into a *ditch* and immediately drove back out with ease, I nevertheless point out that Sergeant Wilson also testified that "[t]he county road right there is pretty narrow. There's no shoulder." (Tr. Vol. II, p. 10). Thus, to pull over for a police vehicle would necessarily require leaving the roadway to some extent. When Sergeant Wilson approached Line's window, she rolled it down a few inches and informed him that "she was afraid" and "didn't know that [he] was a police officer." (Tr. Vol. II, p. 9).

[21] When all of the evidence is considered together, including the fact that Sergeant Wilson's body camera stopped working just prior to the incident with Line, it appears that Sergeant Wilson created a situation that placed Line in substantial fear for her safety. If Sergeant Wilson's radar had already confirmed Line's excessive speed, and if Line was really weaving across her lane of travel as Sergeant Wilson purportedly observed, he could have activated his lights at that point and initiated the stop. Instead, with his status as a police officer obscured by the darkness, he followed her in a manner that, reasonably, caused her to believe that she was about to be victimized. Although the State technically

established the necessary elements to support Line's conviction for a Class A misdemeanor, I am truly troubled by the police officer's actions in this case.